Richard C. O'REILLY, Plaintiff–Appellee
and Cross–Appellant,

v.

PHYSICIANS MUTUAL INSURANCE
COMPANY, a Nebraska corporation,
Defendant–Appellant and Cross–Appel-
lee,

and

James J. Frost, Appellant
and Cross–Appellee.

No. 97CA2262.

Colorado Court of Appeals,
Div. III.

May 13, 1999.

Rehearing Denied June 17, 1999.

Certiorari Denied, Jan. 24, 2000.

Arckey & Reha, L.L.C., John F. Reha, Littleton, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Darrell G. Waas, Patricia C. Campbell, Denver, Colorado; McGrath, North, Mullin, Kratz, P.C., James J. Frost, Omaha, Nebraska, for Defendant–Appellant and Cross–Appellees and Appellant.

Opinion by Judge JONES.

In this action concerning termination of an employment contract, defendant, Physicians Mutual Insurance Company (PMIC), appeals the judgment against it and in favor of plaintiff, Richard C. O'Reilly, on O'Reilly's contract-based claim of implied duty of good faith and fair dealing. O'Reilly cross-appeals the judgment against him and in favor of PMIC on his claim for breach of contract and the dismissal of his tort-based claim of breach of implied duty of good faith and fair dealing. He also cross-appeals the amount

of damages awarded to him. Consolidated with these appeals is the appeal of PMIC's counsel, James J. Frost, who contends that the trial court erred in the imposition of sanctions against him personally for a discovery violation. We reverse in part, affirm in part, and remand for further findings.

Both PMIC's appeal and O'Reilly's cross-appeal arise from PMIC's termination of O'Reilly as its insurance agent. In September 1988, O'Reilly entered into an agency agreement with PMIC, whereby he agreed, among other things, to act as a full-time exclusive agent for PMIC and not to sell or represent any other insurance company while under contract with PMIC. Subsequently, O'Reilly entered into agency agreements with five other insurance companies. After confirming that O'Reilly had entered into an agreement with another insurance company, PMIC terminated its agreement with O'Reilly because of his violation of his obligation of exclusivity.

Following his termination, O'Reilly brought suit against PMIC and his manager, who is not a party to this appeal. O'Reilly asserted eleven claims, including fraud, negligent misrepresentation, interference with contractual relationships, breach of contract, breach of the contract-based implied duty of good faith and fair dealing, breach of the tort-based implied duty of good faith and fair dealing, violation of covenant not to compete prohibition and public policy wrongful termination, deceptive trade practice, and outrageous conduct/intentional infliction of emotional distress. O'Reilly sought compensatory and exemplary damages and, later, requested attorney fees for frivolous defense.

. At the conclusion of the bench trial, O'Reilly withdrew his claims for fraud, negligent misrepresentation, and intentional infliction of emotional distress, conceding that he had not produced sufficient evidence to support these claims. On the remaining claims, the trial court found in favor of PMIC and the manager, except as to O'Reilly's contract-based claim for breach of implied duty of good faith and fair dealing. Concerning this claim, the trial court found that PMIC had violated its duty to O'Reilly by not providing the income O'Reilly reasonably expected, and awarded O'Reilly $10,475 in damages. The court further awarded O'Reilly $8,099 in costs pursuant to § 13–16–122, C.R.S.1998.

Additionally, the trial court imposed a sanction against PMIC's attorney, Frost. The sanction was imposed upon the court's finding that PMIC, without justification, had withheld tapes containing information that was responsive to a discovery request made by O'Reilly. As a sanction, the court imposed reasonable attorney fees and expenses against Frost and in favor of O'Reilly in the amount of $17,500.

### I. PMIC's Appeal

In appealing the trial court's judgment in favor of O'Reilly on the claim of contract-based breach of the implied duty of good faith and fair dealing, PMIC contends that the trial court erred by relying on parol evidence to determine the intent of the parties. We agree.

■■■ Every contract contains an implied duty of good faith and fair dealing, requiring the parties to the agreement to perform their contractual obligations in good faith and in a reasonable manner. *Crown Life Insurance Co. v. Haag Ltd. Partnership*, 929 P.2d 42 (Colo.App.1996). The purpose of the duty is to effectuate the intentions of the parties or to honor their reasonable expectations as expressed in their agreement. *Amoco Oil Co. v. Ervin*, 908 P.2d 493 (Colo.1995).

■■■ However, the duty may be relied upon only when one party has discretionary authority to perform certain contract terms, including discretionary acts, in good faith. Thus, a breach of the duty occurs when one party uses discretion conferred by the contract to act dishonestly or to act outside the scope of accepted commercial practices to deprive the other party of the benefit of the contract. *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359 (Colo.App.1994).

Here, the trial court found that PMIC had breached the implied duty of good faith and fair dealing by "not providing the income as reasonably expected" by O'Reilly. The trial court reached this conclusion after relying on

parol evidence to determine O'Reilly's "income expectations." Specifically, the evidence upon which the court relied included a newspaper advertisement placed by PMIC for an agent position, a sales pitch used by PMIC for new recruits, testimony of two former PMIC agents who had been informed during an initial interview that they could make a six-figure income, and taped conversations between two PMIC managers regarding the low commissions earned by PMIC's agents.

## A.

■ Initially, we conclude that the trial court properly determined that the agreement at issue is unambiguous and fully integrated.

■ The intent and purpose of the parties to an agreement is to be determined primarily from the language of the document itself. Extraneous evidence is admissible to prove the intent of the parties only when the terms of the instrument are ambiguous. Written agreements which are complete, clear in their terms and free from ambiguity are to be enforced as written because the parties' intentions thereunder may be discerned from the face of the instruments. Determination of the effect of written documents that constitute an agreement is a matter of law. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978).

A review of the record here reveals the agreement in question to be a series of written documents, including, *inter alia*, an agent's agreement, a commission schedule, a declaration of exclusive agent, and a full-time exclusive agent contract, all dated September 8, 1988. In addition, the agreement includes several documents, such as commission schedules or announcements, which specifically reference the September 8, 1988, agreement and are required to be attached thereto, and become a part of it by that reference. Each document is printed in clear, easy to read, understandable language.

Under this state of the record, we agree with the trial court's conclusion that the agreement is fully integrated and unambiguous, and that the intentions of the parties may be determined from the documents that comprise the agreement. *See Radiology Professional Corp. v. Trinidad Area Health Ass'n, supra; Harty v. Hoerner*, 170 Colo. 506, 463 P.2d 313 (1969).

## B.

■ However, the trial court relied on evidence extrinsic to the agreement despite its earlier finding that the written agreement between the parties was unambiguous and fully integrated. That was error.

■ Once a court makes a finding that an agreement is unambiguous, the court may not look beyond the four corners of the agreement in order to determine the meaning intended by the parties. *See USI Properties East, Inc. v. Simpson*, 938 P.2d 168 (Colo.1997).

Consequently, based on its finding that the agreement was unambiguous, the trial court was precluded from considering evidence extrinsic to the written agreement in determining what O'Reilly's expectations were and concerning the benefits he was to derive from his agreement with PMIC.

Furthermore, the record reflects that the trial court failed to identify which discretionary term in the agreement that PMIC allegedly abused with respect to the duty of good faith and fair dealing. *See Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc., supra.*

The judgment and award of costs must be reversed, and the matter is remanded for a new trial as to this claim.

## II. Frost's Appeal

■ Frost appeals from the trial court's imposition of sanctions against him, pursuant C.R.C.P. 37(b), for a discovery violation. He contends that the trial court could not impose sanctions under C.R.C.P. 37(b)(2) where, as here, there is no violation of a court order. We agree.

The trial court imposed the discovery sanctions against Frost after finding that he had failed to produce tapes, without substantial justification, that contained information that

was responsive to a discovery request made by O'Reilly. Based on these findings, the trial court ordered sanctions of $17,500 against Frost.

The relevant portion of C.R.C.P. 37(b)(2), entitled, "Failure to Comply with Order," provides:

> If a party ... *fails to obey an order* to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just .... (emphasis added)

While Colorado cases have not spoken directly to this issue under C.R.C.P. 37(b), federal cases have plainly mandated that the straightforward language of Fed.R.Civ.P. 37(b) limits its applicability to situations in which a court order has been violated. Thus, the federal courts have concluded that sanctions are appropriate under this rule if, and only if, a discovery order has been violated. *See Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469 (D.C.Cir.1995) (a production order is needed to trigger Fed.R.Civ.P. 37(b)); *Brandt v. Vulcan, Inc.*, 30 F.3d 752 (7th Cir.1994) (party could not seek relief under Fed.R.Civ.P. 37(b)(2) where he failed to obtain a court order compelling compliance with discovery request); 7 *Moore's Federal Practice* § 37.42[1] (3rd ed.1999) ("the absence of a prior order or direction compelling discovery precludes [Fed.R.Civ.P.] 37(b) sanctions.").

■ We conclude that the corresponding language of C.R.C.P. 37(b), along with the clear statement of policy from the federal cases, dictates that our rule be interpreted in exactly the same way as Fed.R.Civ.P. 37(b).

Here, the record reveals that no court order had been requested or issued compelling either production of the tapes or further response to O'Reilly's discovery requests. The absence of a prior order compelling discovery precluded C.R.C.P. 37(b) sanctions against Frost for any alleged violation. Accordingly, the trial court's order imposing sanctions against Frost is reversed.

### III. *O'Reilly's Cross–Appeal*
#### A.

O'Reilly first contends that the trial court erred in finding in favor of PMIC on his claim of breach of contract. We disagree.

#### 1.

O'Reilly asserts that he established a breach of contract claim by showing that PMIC wrongfully terminated him. We disagree.

#### a.

■ O'Reilly first argues that the Full–Time Exclusive Agent Contract and the exclusive agent Declaration are not part of the contract and that, therefore, PMIC breached the agreement by relying on these documents as the basis for his termination. However, the record reflects that, when O'Reilly agreed to be PMIC's agent, he was contemporaneously presented with an Agent's Agreement, a Full–Time Exclusive Agent Contract, an exclusive agent Declaration, and an initial commission schedule. These documents, all executed by O'Reilly on September 8, 1988, constitute the "standard package" executed by all agents as a prerequisite to appointment with PMIC.

O'Reilly argues that the full-time Exclusive Agent Contract and the exclusive agent Declaration are not part of his agent's agreement with PMIC. He states that, therefore, by relying on these documents, PMIC wrongfully terminated him. The trial court rejected this argument, finding instead that the agreement between the parties embraced all of the documents "collectively signed at the same time in order to allow employment to start."

■ We agree with the trial court's interpretation of the agreement. If a simultaneously executed agreement between the same parties, relating to the same subject matter, is contained in more than one instrument, the documents must be construed together to determine intent as though the entire agreement were contained in a single document. *See Harty v. Hoerner, supra; Roemmich v. Lutheran Hospitals & Homes Society*, 934 P.2d 873 (Colo.App.1996).

Here, the various documents relate to O'Reilly's status as a PMIC agent and all

were executed contemporaneously on September 8, 1998. Therefore, we agree with the trial court that these instruments, construed together, constitute the agreement between the parties.

 In this regard, we also reject O'Reilly's contention that PMIC breached the agreement by relying on the Full–Time Exclusive Agent Contract and the exclusive agent Declaration. The agreement read as a whole unambiguously permitted PMIC to terminate O'Reilly for cause if he "failed to perform any obligation required by this contract or has performed any act prohibited by this contract." Thus, as O'Reilly entered into agreements with other insurance companies in contravention of the terms of the agreement, PMIC was entitled, under the terms of the agreement, to terminate O'Reilly for failing to adhere to the obligation of exclusivity.

Our conclusion that the agreement between the parties encompasses the exclusivity contract and declaration also requires us to reject O'Reilly's contention that these documents, standing alone, are not enforceable contracts because they do not contain a mutuality of obligation. This argument is based on the assumption that these documents are not part of the agreement between the parties. However, when the agreement is read as a whole, mutuality of obligation is satisfied.

### b.

O'Reilly alternatively argues that his status as both an independent contractor and a fiduciary excuses him from the contract's requirement of exclusivity and that, therefore, by enforcing this term, PMIC wrongfully terminated him. We disagree.

 The evidence plainly reveals that, despite his status as an independent contractor and fiduciary, O'Reilly is, nonetheless, bound by the terms of the integrated agreement, in part, because the terms of the integrated contract, and his status within it, do not interfere with his ability to perform his duties for PMIC.

### c.

Finally, O'Reilly argues that PMIC wrongfully terminated him by relying on a competitive activity clause set forth in a commission schedule, which he maintains is illegal. However, the record contradicts O'Reilly's interpretation of the facts.

The letter notifying O'Reilly of his termination, dated March 31, 1993, indicates that O'Reilly was not terminated for violation of the competitive activity clause but, rather, for "violation of Company policy—exclusive full time agreement." As previously stated, PMIC acted within its contractual rights in terminating O'Reilly on this basis.

### 2.

In an alternative argument, O'Reilly contends that he established his breach of contract claim by showing that PMIC unilaterally modified the agreement without supporting consideration. Specifically, he argues that PMIC unilaterally modified the contract by reducing the commissions he received under the agreement. Again, however, we disagree with O'Reilly's interpretation of the facts.

 A review of the agreement reveals that PMIC had the express right to alter or modify O'Reilly's commission. Therefore, in reducing O'Reilly's commissions, PMIC did not unilaterally modify the agreement but, rather, merely exercised its contractual right to alter the commission schedules.

### 3.

Finally, we do not consider O'Reilly's argument that the agreement contains a provision which illegally requires the forfeiture of earned commissions because this argument, even if established, does not support O'Reilly's breach of contract claim.

### B.

 O'Reilly's also contends that the trial court erred in dismissing his tort-based claim for breach of implied duty of good faith and fair dealing. In asserting this claim, O'Reilly invites us to revisit the issue affirmatively decided in *Decker v. Browning–Ferris In-*

*dustries of Colorado, Inc.*, 931 P.2d 436 (Colo.1997). We decline O'Reilly's invitation and reject his argument for the reasons set forth in *Decker*.

The trial court's judgment with respect to the claims asserted by O'Reilly, with the exception of the contract-based claim of breach of implied duty of good faith and fair dealing, is affirmed. The court's judgment against PMIC on this remaining claim is reversed, as is the award of costs. The court's order imposing sanctions against Frost for discovery violations is also reversed. The cause is remanded for a new trial with respect to the contract-based claim of breach of implied duty of good faith and fair dealing.

Judge MARQUEZ and Judge ROY concur.