Mark OLSON, Plaintiff–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellee.

No. 06CA2164.

Colorado Court of Appeals, Div. IV.

Nov. 29, 2007.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.

Sears & Swanson, P.C., Victoria C. Swanson, Colorado Springs, Colorado, for Plaintiff–Appellant.

Fisher, Sweetbaum, Levin & Sands, P.C., Jon F. Sands, Kimberle E. O'Brien, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge BERNARD.

In this uninsured motorist (UM) action, plaintiff, Mark Olson (the insured), appeals the summary judgment in favor of defendant, State Farm Mutual Automobile Insurance Company (the insurance company). We affirm.

## I. Background

The following facts are undisputed. On February 27, 2002, the insured was involved in a hit-and-run collision when his vehicle was negligently struck by an unknown motorist. The insured was insured by the insurance company, with UM coverage.

The insured notified the insurance company of the accident. On April 3, 2003, the insurance company acknowledged the insured had a UM claim, and sent the insured a letter offering him $1,000 to settle the UM claim. The insured cashed the check. The insurance company did not advise the insured that, if he disputed the payment of $1,000 as a full and complete settlement of his UM claim, the only way to preserve his UM claim would be to demand arbitration or to file suit against the insurance company within three years of the date of his accident.

In October 2005, the insured sought legal counsel. Subsequently, the insured asked the insurance company to waive the statute of limitations on his UM claim because the insurance company had not informed him of the time limits within which to dispute the UM settlement. The insurance company denied this request.

On November 9, 2005, the insured filed this action asserting a claim for UM benefits, based on breach of contract, and filed claims alleging the insurance company had engaged in bad faith insurance conduct. The insurance company asserted the affirmative defense that the insured's claims were barred by the statute of limitations. The insurance company then moved for summary judgment on all of the insured's claims.

After the insured filed a response and the insurance company filed a reply, the insured moved to file a surreply. The trial court did not rule on this motion.

On September 19, 2006, the trial court granted the insurance company's motion for summary judgment.

## II. Summary Judgment

An appellate court reviews a trial court's grant of summary judgment de novo. *A.C. Excavating v. Yacht Club II Homeowners Ass'n*, 114 P.3d 862, 865 (Colo.2005). Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate no issue of material fact exists,

and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501 (Colo.2004). For summary judgment purposes, a "material fact" is one that will affect the case's outcome. *Sender v. Powell*, 902 P.2d 947, 950 (Colo.App.1995).

The moving party bears the initial burden of providing the basis for the motion and identifying those portions of the record and any affidavits that demonstrate there is not a genuine issue of material fact. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo.1987). Whether a genuine issue of material fact exists is a question of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo.1988).

In some cases, "equity will toll a statute of limitations if a party fails to disclose information that he or she is legally required to reveal and the other party is prejudiced." *Samples–Ehrlich v. Simon*, 876 P.2d 108, 110 (Colo.App.1994). Once the statute of limitations has been raised as a defense, the burden is upon the plaintiff to establish the defendant's actions prevented him or her from filing a timely claim. *Id.*

Issues such as when a cause of action accrues, whether a claim is barred by a statute of limitations, and whether a statute of limitations should be equitably tolled, are issues of fact. *See Mastro v. Brodie*, 682 P.2d 1162, 1169 (Colo.1984) (when claim accrues for alleged negligent conduct); *Terry v. Sullivan*, 58 P.3d 1098, 1101 (Colo.App.2002)(statute of limitations and equitable tolling).

However, if the undisputed facts show that a plaintiff discovered the existence of a claim as of a particular date, that a statute of limitations bars the filing of a claim, or that a plaintiff is not entitled to rely on the doctrine of equitable tolling, then summary judgment may be granted. *See Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099, 1101 (Colo.App.2005)("[I]f undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date, then the issue of whether the statute of limitations bars a particular claim may be decided as a matter of law."); *Noel v. Hoover*, 12 P.3d 328, 330–31 (Colo.App.2000) (equitable tolling of statute of limitations); *Palisades Nat'l Bank v. Williams*, 816 P.2d 961, 963 (Colo.App.1991)(discovery of negligent conduct in legal malpractice case).

Here, the insured contends the trial court improperly granted summary judgment because its order was based on findings relating to disputed facts and the improper resolution of undisputed facts in the insurance company's favor. As we explain below, some of the insured's arguments raise issues of law, not of fact, which can be resolved by summary judgment. The remaining issues do not raise questions of material fact.

## III. Statute of Limitations

### A. Introduction

An insured who alleges a claim against an insurer based on a UM policy must file a claim within three years after the cause of action accrues. § 13–80–107.5(1)(a), C.R.S. 2007. All tort actions for bad faith must be commenced within two years after the cause of action accrues. § 13–80–102(1)(a), C.R.S. 2007; *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 150–51 (Colo.2007).

A cause of action in a UM case accrues "after both the existence of the death, injury, or damage giving rise to the claim and the cause of the death, injury, or damage are known or should have been known by the exercise of reasonable diligence." § 13–80–107.5(3), C.R.S.2007; *see Trigg*, 129 P.3d at 1101. A claim for bad faith breach of an insurance contract accrues when "both the injury and its cause are known or should have been known by the exercise of reasonable diligence." § 13–80–108(1), C.R.S.2007; *see Harmon v. Fred S. James & Co.*, 899 P.2d 258, 260 (Colo.App.1994).

Here, the insured's complaint alleged that (1) the insured requested UM benefits up to the policy limits; (2) the insurance company breached the insurance contract by failing to pay UM benefits beyond $1,000; (3) the insurance company acted in bad faith because it violated its duties under the Unfair Claims Practices Act, section 10–3–1104(1)(h), C.R.S. 2007; and (4) the insurance company acted in

bad faith because (a) it did not advise the insured of the maximum benefits available or the procedures to be followed to obtain those benefits; (b) it did not advise the insured that his acceptance of the $1,000 check would completely settle his claim; (c) it breached its duty of good faith and fair dealing by failing to inform the insured of the running of the statute of limitations; and (d) it unreasonably denied the insured's request to reopen his claim.

The insurance company raises the defense that, because the lawsuit was not filed until November 9, 2005, the insured's claims were barred by the statute of limitations. The insurance company contends:

- The claims for UM benefits and for breach of contract accrued on the date of the accident, and so those claims should have been filed by February 27, 2005, under the three-year statute of limitations found in section 13–80–107.5(1)(a); and

- The bad faith claims accrued when the insurance company sent the insured the letter offering $1,000 to settle the UM claim and the check for that amount, and so those claims should have been filed by April 3, 2005, under the two-year statute of limitations found in section 13–80–102(1)(a). The insured argues his claims are not barred because:

- None of his claims accrued until he consulted an attorney in October 2005;

- His bad faith claim did not accrue until February 27, 2005, when the three-year statute of limitations ran out for his claims for payment of UM benefits and breach of contract, because the insurance company had a duty to inform him when the statute of limitations would run, and he was injured by its failure to have done so; and

- The insurance company committed misconduct that equitably tolled the statute of limitations for all of the insured's claims.

### B. Did the Insured's Claims Not Accrue Until He Consulted a Lawyer?

■ The insured argues none of his claims accrued until he consulted an attorney in October 2005, and first learned of the insurance company's alleged misconduct. We are not persuaded.

In *Winkler v. Rocky Mountain Conference*, 923 P.2d 152, 159 (Colo.App.1995), a division of this court discussed the kind of information a plaintiff must possess for an action to accrue: "The critical inquiry of when an action accrues is knowledge of the facts essential to the cause of action, not knowledge of the legal theory upon which the action may be brought."

■ The statutes of limitations at issue here, sections 13–80–107.5(1)(a) and 13–80–108(1), require that the plaintiff use due diligence to find out the relevant circumstances or events. This requirement creates an objective standard, and "does not reward denial or self-induced ignorance." *Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 900 (Colo.App.2003).

■ As a general matter, ignorance of the law does not expand the statute of limitations for filing suit. *See, e.g., Ormiston v. Nelson*, 117 F.3d 69, 72 n. 5 (2d Cir.1997); *Taylor v. Plousis*, 101 F.Supp.2d 255, 270 (D.N.J.2000); *Crowder v. Master Fin., Inc.*, 176 Md.App. 631, 933 A.2d 905, 927 (2007); *cf. People v. White*, 981 P.2d 624, 626 (Colo.App.1998)(ignorance of time bar contained in section 16–5–402, C.R.S.2007, does not constitute justifiable excuse or excusable neglect to avoid its application).

We have found no Colorado cases addressing the insured's argument that his claims did not accrue until he discussed them with counsel. However, decisions from other jurisdictions employing the same general principles that *Winkler* describes have rejected such a result. *See Wright v. Heyne*, 349 F.3d 321, 330–31 (6th Cir.2003) ("If the statute were tolled until an attorney informs the plaintiff that he or she has an ERISA claim, a plaintiff could delay accrual of a claim simply by waiting before consulting an attorney. This would nullify [the statute of limitations]."); *Bolduc v. Nat'l Semiconductor Corp.*, 35 F.Supp.2d 106, 120 (D.Me.1998)("It would belie logic to fashion a rule whereby a cause of action accrues on the date a claimant consults with an attorney and discovers

he or she may have an actionable claim rather than on the day he or she discovers the facts pertinent to this injury that may or may not give rise to the legal claim."); *Gutierrez v. Mofid*, 39 Cal.3d 892, 898, 218 Cal.Rptr. 313, 705 P.2d 886, 889 (1985)("[I]f one has suffered appreciable harm and knows or suspects that professional blundering is its cause, the fact that an attorney has not yet advised him does not postpone commencement of the limitations period."); *Crowder*, 933 A.2d at 921 ("[F]ailure to consult an attorney to inquire about one's legal rights will [not] expand the period of limitations within which suit must be filed."); *Burd v. New Jersey Tel. Co.*, 76 N.J. 284, 291–92, 386 A.2d 1310, 1314 (1978) (court rejects argument that "the applicable limitations period does not begin running until [the plaintiff] learns from a lawyer that [the facts of his case] equate with a legal cause of action"); *Maestas v. Zager*, 141 N.M. 154, 152 P.3d 141, 147 (2007)(the course the plaintiff proposed would delay the accrual of all claims until plaintiffs consult counsel); *Reichelt v. Johns–Manville Corp.*, 107 Wash.2d 761, 772, 733 P.2d 530, 536 (1987)("[The plaintiff] would have us adopt a rule that would in effect toll the statute of limitations until a party walks into a lawyer's office and is specifically advised that he or she has a legal cause of action; that is not the law. A party must exercise reasonable diligence in pursuing a legal claim.").

We find these decisions to be well reasoned, and we apply them here. They are consistent with the position espoused in *Winkler* that the relevant issue is when a plaintiff discovers facts "essential to the cause of action," not the legal theory upon which the cause of action would be based.

Further, the insured's position would, in effect, toll the time when causes of action accrue indefinitely unless and until plaintiffs consult counsel. We find such a course inconsistent with the requirement, expressed by the statutes of limitations at issue here, that plaintiffs employ due diligence to discover relevant circumstances and events. Tolling the time when causes of action accrue until a consultation with counsel occurs would discourage due diligence and "reward denial

or self-induced ignorance." *Sulca*, 77 P.3d at 900. Because such a result would be contrary to the express purposes of these statutes of limitations, we reject, as a matter of law, the insured's contention that his claims did not accrue until he consulted with counsel. *See Palisades Nat'l Bank*, 816 P.2d at 963.

### C. What Duties Did the Insurance Company Have?

#### 1. Fiduciary Duty

■ The insured argues the insurance company had a quasi-fiduciary duty to inform him of the time limits within which he was required to file a UM claim. We disagree.

■■ Claims for breaches of insurance contracts can arise in first-party and third-party contexts. First-party claims involve allegations by an insured that the insurer did not make, or delayed making, payments to the insured under a first-party insurance policy. Third-party claims involve allegations that the insurer acted unreasonably in its investigation, defense, or settlement of a claim brought by a third person against the person the company insures. *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414–15 (Colo.2004).

The insured correctly observes that *State Farm Mutual Automobile Insurance Co. v. Brekke*, 105 P.3d, 177, 189 n. 12 (Colo.2004), indicates there may be an inconsistency between statements in two prior cases about the existence of a quasi-fiduciary relationship in first-party insurance cases. *Compare Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487, 494 (Colo.1998) (insurer owes insured "contractual and quasi-fiduciary duty"), *with Goodson*, 89 P.3d at 414–15 (although a quasi-fiduciary relationship exists between an insurer and an insured in the third-party context, there is no quasi-fiduciary duty between them in a first-party context).

■ To the extent there is an inconsistency between these two cases, the supreme court has recently expressly reaffirmed *Goodson*, finding there was no quasi-fiduciary duty between an insurer and an insured in a first-party workers' compensation claim.

*Brodeur,* 169 P.3d at 152. *Brodeur* did not mention *Peterman.* We choose to rely on the more recent cases, *Brodeur* and *Goodson,* and conclude these cases make clear there is no quasi-fiduciary relationship between the insurance company and the insured in this first-party claim.

We find the reasoning in *Brodeur* on this point to be compelling:

> In a first-party direct coverage case, the insured has *not* ceded any right to represent his interests to the insurer. The insured can directly influence the insurer's claim evaluation process and may file an action to compel performance by the insurer or seek damages for failure of the insurer to perform. In addition, the insurer is afforded wide latitude in its ability to investigate claims and to resist false or unfounded efforts to obtain funds. Thus, the basis for our finding a quasi-fiduciary relationship in [*Farmers Group, Inc. v. Trimble,* 691 P.2d 1138, 1141 (Colo.1984) ]—the insurer's control over the defense of actions brought against the insured by third parties—does not exist in a first-party context. "In a first-party context, where the insured has not ceded to the insurer the right to represent his or her interests, there is no quasi-fiduciary duty."

*Brodeur,* 169 P.3d at 152 (quoting *Goodson,* 89 P.3d at 415). (emphasis in original; citations omitted).

Therefore, we conclude, as a matter of law, that there was no quasi-fiduciary duty between the insurance company and the insured that would have required the insurance company to inform the insured about when the statute of limitations would run to bar his UM claim. *See A.C. Excavating,* 114 P.3d at 866 (existence and scope of a tort duty is a question of law); *Am. Guar. & Liab. Ins. Co. v. King,* 97 P.3d 161, 168 (Colo.App.2003)(existence and nature of insurer's duty to act in good faith is a question of law to be reviewed de novo).

2. Duty of Good Faith and Fair Dealing

■ Relying on *Price v. New Jersey Manufacturers Insurance Co.,* 368 N.J.Super. 356, 846 A.2d 617 (N.J.Super.Ct.App.Div.2004) (*Price I* ), the insured contends the insurance company's duty to act fairly and in good faith includes the duty to inform the insured when the statute of limitations to file a claim would run. We conclude Colorado law does not impose a duty on an insurer to notify an insured when the statute of limitations will run, and the record in this case does not raise a material issue of fact whether the insurance company assumed such a duty through its practices and procedures.

It is uncontested that every insurance contract imposes upon an insurer an implied covenant to act in good faith toward, and to deal fairly with, an insured. The breach of this covenant subjects an insurer to tort liability. *Brodeur,* 169 P.3d at 146–47.

*Price I* concluded an insurer breached its duty by

> stringing along its insured by a period of over three years, while creating the appearance, by both word and deed, that all was well with [the insured's] UM claim, and it was just a matter of gathering and processing the required information.

368 N.J.Super. at 365, 846 A.2d at 623.

In *Price v. New Jersey Manufacturers Insurance Co.,* 182 N.J. 519, 528, 867 A.2d 1181, 1187 (2005)(*Price II* ), the New Jersey Supreme Court stated it did not read the decision in *Price I* to require notice in all cases in which an insurer intends to raise a statute of limitations defense. Rather, according to the New Jersey Supreme Court, the holding in *Price I* was that the insurer was equitably estopped from raising a statute of limitations defense because of the nature of its conduct in that case.

We have found no case, and the parties have not cited one, in which a court has held that an insurer has a general duty to advise an insured of when the statute of limitations will run. Several courts have stated the opposite. *See* Lee R. Russ & Thomas Segalla, 16 *Couch on Insurance* § 235:72 (3d ed.2007)(citing cases). At least one state court has imposed a duty on an insurer to advise a claimant who is *not* a party to an insurance policy of the limitations period. *See Union Auto. Indem. Ass'n v. Shields,* 79 F.3d 39, 41–42 (7th Cir.1996)(analyzing *Stew-*

*art v. Walker,* 597 N.E.2d 368, 375–76 (Ind. Ct.App.1992)).

Legislatures in other states have enacted statutes that specifically require insurers to notify their insureds when the statute of limitations for filing a claim will run. 16 *Couch on Insurance* § 235:73 (citing cases applying statutes). Colorado does not have a similar statute.

■■■■ The insured contends that section 10–3–1104(1)(h)(I), C.R.S.2007, creates such a duty because that subsection prohibits the unfair claim settlement practice of "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue." Although the plain meaning of section 10–3–1104(1)(h)(I) is that insurers are prohibited from making misrepresentations about facts or coverage, there is no indication in its language that the legislature intended to impose upon them the affirmative duty of informing their insureds when the statute of limitations will run. *Cf. Bourie v. Dep't of Higher Educ.,* 929 P.2d 18, 21 (Colo.App. 1996) (statutes authorizing prosecution of police officers for excessive force did not create affirmative duty on public entities to file, or cause to have filed, criminal charges). If our General Assembly had intended to impose such an obligation, it would have done so explicitly. Therefore, we decline to read into the statute a duty based upon language that does not exist. *See Ceja v. Lemire,* 154 P.3d 1064, 1067 (Colo.2007).

We conclude that, although the insurance contract between the insurance company and the insured contains an implied covenant of good faith and fair dealing, this implied covenant did not impose upon the insurance company a legal duty to inform the insured of when the statute of limitations would run. *See A.C. Excavating,* 114 P.3d at 866; *Am. Guar. & Liab. Ins. Co. v. King,* 97 P.3d at 168.

Nevertheless, the insured further contends that the insurance company, by its conduct, assumed the obligation to inform the insured of the limitations period. We are not persuaded.

■■■■ The insured contends there is language in the insurance company's claims manual that creates such a duty. The insured points to a series of provisions related to the insurance company's claims philosophy—"State Farm's claim philosophy is to pay what we owe, promptly, courteously and efficiently"—and its "Commitment to Our Policyholders," which included references to carrying out "our part of the bargain" in good faith; explaining "all relevant coverages"; and encouraging insureds to "report all losses and avail themselves of all benefits."

However, the portions of the claims manual upon which the insured relies do not state that the insurance company is committed to informing its insureds about when the statute of limitations for filing claims will run. We will not read such a duty into language that does not expressly create it. Indeed, all of the commitments quoted from the claims manual—performing responsibilities in good faith, explaining coverage, and encouraging the reporting of losses and receipt of benefits—can be satisfied without making any reference to the statute of limitations.

Further, the insured has not provided any information to establish that (1) the claims manual was incorporated into the insurance contract, (2) the insurance contract was ambiguous about the obligations the insurance company was required to perform, or (3) the manual was necessary to establish the intent of the parties. Without such a connection, the insured has not established that the claims manual created a legal obligation that would serve as the basis for a breach of contract claim. *See O'Reilly v. Physicians Mut. Ins. Co.,* 992 P.2d 644, 647 (Colo.App. 1999) ("Extraneous evidence is admissible to prove the intent of the parties only when the terms of the instrument are ambiguous."); *U.S. Fid. & Guar. Co. v. Hollerich & Walgenbach Co.,* 22 Ill.App.3d 156, 161, 319 N.E.2d 280, 285 (1974)("As a general rule a company manual is not a part of an insurance policy. It may, however, become so, provided it is embodied in the policy or an endorsement by clear and unmistakable terms, or by a reference thereto as governing the rights of the parties.").

The insured also argues that the insurance company had a past practice of informing its

policyholders of filing deadlines, and thus had a duty to disclose such deadlines to him.

■ Mere conclusory statements are not sufficient to raise genuine factual issues. *Ellerman v. Kite*, 625 P.2d 1006, 1008 (Colo. 1981); *Walter v. City & County of Denver*, 983 P.2d 88, 90 (Colo.App.1998). Therefore, when a response to a motion for summary judgment or an accompanying affidavit states conclusions on ultimate issues without including facts that tend to prove or disprove the allegations made in the motion for summary judgment, it is insufficient to give rise to genuine issues of fact. *Ginter v. Palmer & Co.*, 196 Colo. 203, 206–07, 585 P.2d 583, 585 (1978); *Walter*, 983 P.2d at 90; *Hoary v. Lowe*, 734 P.2d 154, 155 (Colo.App.1987).

■ Here, the insured has not presented evidence showing the insurance company had a history of disclosing filing deadlines or statutes of limitations to its policyholders. The insured's sole support for his contention is one of the insurance company's activity logs from one claim, which states, "watch SOL and advise atty [sic] of date if he does not already know on this first party case."

This note does not refer to a widespread practice or policy of disclosing filing deadlines. Standing alone, this singular reference does not evidence a company-wide policy of informing policyholders of filing deadlines. Therefore, we need not decide whether the insurance company assumed a duty to disclose filing dates based upon its past practices.

Thus, we conclude there was not a material issue of fact whether the insurance company, through its policy manual or its alleged past practices, had assumed the duty of informing its insureds of the statute of limitations period. *See Broderick Inv. Co. v. Strand Nordstrom Stailey Parker, Inc.*, 794 P.2d 264, 267 (Colo.App.1990) (summary judgment properly granted when record did not raise issue of fact whether independent insurance agency had assumed duty to inform plant owner of changes in certificate of insurance covering contractor's liability).

Our rejection of the insured's contention that the insurance company had a legal duty, or assumed a duty, to inform him when the statute of limitations would run logically leads us to conclude that the insurance company's failure to provide the insured with that information has no effect on the analysis of when his claims accrued.

### D. Does Equitable Tolling Apply?

The insured argues there is a material issue of fact whether the insurance company's alleged misconduct should delay the application of the statute of limitations for all of his claims under the doctrine of equitable tolling. We do not agree.

■ Equitable tolling, an application of the concept of equitable estoppel, is generally applied to prevent a defendant from asserting a statute of limitations defense where the defendant's wrongful actions have prevented the plaintiff from asserting a timely claim, or when extraordinary circumstances render filing a claim within the statutory period impossible. *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096–97 (Colo. 1996).

■ This doctrine is not favored, and it is only applied when all of its elements are clearly shown. The elements of equitable tolling are (1) the party to be estopped must know the relevant facts; (2) the party to be estopped must intend that his or her conduct be acted on, or act in a manner that the party asserting estoppel believes the party to be estopped has such intent; (3) the party asserting estoppel must be ignorant of the relevant facts; and (4) the party asserting estoppel must rely on the other party's conduct to his or her detriment. *Dove v. Delgado*, 808 P.2d 1270, 1275 (Colo.1991). To show a factual conflict exists, thus rendering summary judgment improper, a plaintiff must assert facts sufficient to establish that the defendant's actions prevented the filing of a timely claim. *Shell W. E & P, Inc. v. Dolores County Bd. of Comm'rs*, 948 P.2d 1002, 1008 (Colo.1997).

The insured asserts the insurance company's conduct was similar to the conduct of the insurer that was found to toll the statute of limitations in *Price I*. We do not agree.

In *Price II*, the New Jersey Supreme Court indicated that *Price I* was based upon a conclusion that the insurer was equitably estopped from raising the statute of limitations as a defense because the insurer "acted as though plaintiff's claim had been filed, and it failed to inform plaintiff that its investigation did not toll the running of the applicable statute of limitations." *Price II*, 182 N.J. at 528, 867 A.2d at 1187.

■ Here, the insurance company's representative sent the insured a letter on April 3, 2003, acknowledging that the insured had a UM claim. A $1,000 check to settle the claim was enclosed with the letter. The letter read: "I have completed my evaluation of the injuries you sustained in this loss. At [this] time, I will offer you $1,000 in settlement of your Uninsured Motorist claim. Please call me to discuss."

The record does not show, or even suggest, that the insurance company entrapped the insured by lulling him into a false sense of security that his claim would be resolved to his satisfaction. Rather, almost two full years before the statute of limitations would run on the insured's UM claim, the insurance company informed the insured that it was offering the insured money to settle the insured's UM claim.

The letter cannot be reasonably read to suggest that the insurance company was "stringing along" the insured by continuing to investigate the insured's claim, and that there may have been more money to come. It was, instead, an unequivocal statement that the insurance company was proposing to finally resolve the claim with an offer of "$1,000 in settlement of your Uninsured Motorist claim." The letter thus indicated there would be no more payments to the insured, and no further proceedings, unless the insured called the insurance company "to discuss" the offer. The insured did not call, and cashed the check. Thus, the record here makes clear that, once the letter and the check were received, the insured needed to take further action if the insured was dissatisfied with the settlement offer.

Moreover, we have already concluded the insurance company did not have a legal duty, and did not assume a duty, to inform the insured of when the statute of limitations would run. Thus, we conclude that the insurance company's failure to provide the insured with that information provides no support for the insured's argument that the insurance company acted wrongfully in order to prevent him from making a timely claim.

We conclude there is no disputed issue of material fact whether the insurance company's actions prevented the insured from filing a timely claim, and this question can be resolved by summary judgment. *See Noel*, 12 P.3d at 330–31. The facts in this case do not satisfy the elements necessary for the insured to establish that the statute of limitations should be equitably tolled.

Although some facts indicate the insurance company knew when the statute of limitations would run and the insured did not, there is no evidence to indicate that the insurance company engaged in any conduct intended to deceive the insured about the limitations period. *See Dove*, 808 P.2d at 1275.

### E. Conclusion

■ Here, the accident occurred in February 27, 2002, when the insured's car was struck by an unidentified motorist. It is undisputed the insured was aware of the existence and the cause of the damage on the day the accident occurred. It is also undisputed that the driver of the other car involved in the accident has never been identified, and so the insured was on notice that he had a UM claim as of the date of the accident. Thus, the insured's cause of action for the UM claim accrued on February 27, 2002, and his UM claim should have been filed on or before February 27, 2005. § 13–80–107.5(1)(a), (3); *see Sulca*, 77 P.3d at 900 (statute of limitations in § 13–80–107.5(1)(a) begins to run when an insured knew, or should have known in the exercise of reasonable diligence, that there was "no applicable insurance").

■ As of April 3, 2003, the date the insurance company sent the insured the letter and the check, the insured knew, or should have known by the exercise of reasonable diligence, of his alleged injury—being

paid less than the UM policy limits—and the cause of the injury—the insurance company's admission that the insured had a UM claim and was tendering an amount to settle it. Thus, the insured's cause of action for two components of his bad faith claim—(1) the insurance company did not advise the insured of the maximum benefits available or the procedures to obtain those benefits; and (2) it did not advise the insured that his acceptance of the $1,000 check would completely settle his claim—accrued on April 3, 2003, and his bad faith claims should have been filed on or before April 3, 2005. §§ 13–80–102(1)(a), –108(1); *see Brodeur,* 169 P.3d at 147–49 (bad faith tort claims accrue when plaintiff knew or should have known of injury and cause of injury); *Trimble,* 691 P.2d at 1142 (claim accrues upon unreasonable failure to pay claim).

Based upon our rejection of the insured's argument that his claims did not accrue until he consulted with counsel, and our conclusion that the insurance company did not have a duty to inform the insured of when the statute of limitations would run, we also determine that the trial court properly granted summary judgment on the remaining components of the insured's bad faith claims. The insured claimed the insurance company violated its duties under the Unfair Claims Practices Act, section 10–3–1104(1)(h), but the insured did not show how any duties enumerated in section 10–3–1104(1)(h) had been violated. The insured contended the insurance company unreasonably denied his request to reopen his claim, but this request was not made until after the statute of limitations for the claim had run. The insured alleged the insurance company breached its duty of good faith and fair dealing by failing to inform the insured when the statute of limitations would run, but the duty of good faith and fair dealing did not impose such an obligation on the insurance company.

Based upon the foregoing analysis, we conclude there are no material issues of fact concerning the applicability of the statute of limitations in this case. *See Trigg,* 129 P.3d at 1101. Therefore, the trial court properly granted the insurance company's motion for summary judgment because the insured's claims were barred by operation of the statute of limitations.

IV.   Surreply

■ The insured contends the trial court abused its discretion by failing to consider and grant his motion for surreply. We disagree.

■■ A surreply allows the nonmoving party on a motion for summary judgment to respond to new evidence and new legal arguments raised for the first time in the moving party's reply brief. *Green v. New Mexico,* 420 F.3d 1189, 1197 (10th Cir.2005); *Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159, 1164 (10th Cir.1998). Indeed, a trial court has discretion to deny the request to file a surreply, particularly when the court will grant summary judgment without relying on any new materials that may appear in the moving party's reply brief. *Beaird,* 145 F.3d at 1164–65.

Here, the insured did not raise any legal arguments or refer to any facts that were not included in his previous pleadings. Thus, because the insured's surreply was duplicative of analysis and factual references he had previously presented, the trial court did not abuse its discretion if it failed to consider the surreply.

Judgment affirmed.

Judge VOGT and Judge WEBB concur.