24CA2140 3939 Williams v Weaver 03-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2140
City and County of Denver District Court No. 23CV33398
Honorable Andrew J. Luxen, Judge

3939 Williams Building Corporation,

Plaintiff-Appellee,

v.

Jonathan Weaver,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE KUHN
Fox and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

CYLG, P.C., Christoper A. Young, Denver, Colorado: CYLG, P.C., R. Anthony Young, Raleigh, North Carolina, for Plaintiff-Appellee

Westerfield & Martin, LLC, Zachary S. Westerfield, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Jonathan Weaver, appeals the trial court's entry of summary judgment in favor of plaintiff, 3939 Williams Building Corporation, for breach of contract. We affirm.

## I.     Background

¶ 2     In April 2022, 3939 Williams and Weaver entered into a rental agreement. Weaver agreed to pay monthly installments to lease 7,535 square feet of commercial storage space in a large warehouse. The following year, 3939 Williams sued Weaver for breaching the contract by failing to pay rent. Weaver counterclaimed for breach of contract and gross negligence. He claimed that 3939 Williams breached the rental agreement through its gross negligence when it allowed "the roof . . . to remain in disrepair[,] causing rain to fall on [his] possessions," and failed to respond to "continuous break ins" at the building. He also claimed that 3939 Williams breached the contract by failing to keep the premises in "broom-clean condition," as required by the rental agreement. Finally, Weaver pleaded a tort claim, alleging that 3939 Williams's gross negligence caused him damages. While Weaver admitted to "the withholding of rent," he argued that this action was justified by 3939 Williams's gross negligence and its own earlier breach of contract.

¶ 3     3939 Williams then moved for summary judgment.  It argued that Weaver failed to pay rent for four months.  It also argued that the rental agreement contained a "clear and unambiguous" exculpatory clause.  Through this exculpatory clause, it argued, Weaver had agreed to "not hold nor attempt to hold . . . [3939 Williams] . . . liable for . . . any claims for: (i) any injury or damage to persons or property."  It also asserted that Weaver had waived his right to seek damages for any injuries he suffered under the clause.

¶ 4     In response, Weaver claimed that he was fraudulently induced into signing the contract because he was not told about the building's susceptibility to floods and break-ins.  He also argued that his counterclaim for breach of contract should not be dismissed.  Weaver noted that the exculpatory clause contains an exception exposing 3939 Williams to liability "to the extent [an] injury or damage is caused by the gross negligence or willful misconduct of [3939 Williams]."  Weaver attached two unsworn

exhibits that included "affidavit" in their titles to his response,[1] one signed by himself and another signed by Stephen Hayne, a nonparty familiar with the warehouse. The exhibits included photos, text messages, and an email.

¶ 5     Weaver later moved to amend his counterclaims and add a punitive damages claim. He also moved for leave to file a surreply opposing 3939 Williams's motion for summary judgment. The surreply included updated copies of the Weaver exhibit and the Hayne exhibit. The court denied all these motions.

¶ 6     The trial court ultimately granted 3939 Williams's motion for summary judgment. First, it refused to consider Weaver's unsworn exhibits because they weren't sworn affidavits and they didn't comply with section 13-27-106, C.R.S. 2025. Then, having set aside the exhibits, the trial court concluded that 3939 Williams had proved its claim for breach of contract. The court found that there was no evidence in the record that 3939 Williams's conduct "with

---

[1] Though the exhibits included "affidavit" in their titles, they were not sworn or certified, *see Cody Park Prop. Owners' Ass'n v. Harder*, 251 P.3d 1, 4 (Colo. App. 2009), and they did not meet the requirements for unsworn declarations under section 13-27-106, C.R.S. 2025.

respect to its performance or lack thereof . . . under the [rental agreement] was willful and wanton." Accordingly, the court rejected Weaver's breach of contract counterclaim. The court also concluded that Weaver's gross negligence counterclaim was barred by the economic loss rule. Finally, the court held that Weaver waived his fraudulent inducement and breach of duty of good faith and fair dealing affirmative defenses. The court thus entered summary judgment in 3939 Williams's favor, awarding it $27,416.85 in damages for breach of contract.

¶ 7     Weaver now appeals.

## II.     Analysis

¶ 8     Weaver contends that the trial court erred by granting summary judgment to 3939 Williams on its contract claim and Weaver's contract counterclaim because there were genuine issues of material fact concerning whether 3939 Williams (1) breached the rental agreement by failing to keep the premises in "broom-clean" condition; (2) breached the rental agreement first; and (3) breached the agreement by failing to respond to the flooding and theft issues, amounting to gross negligence. Weaver also contends that the court should have addressed two of his affirmative defenses

because (4) Weaver was fraudulently induced into signing the rental agreement; and (5) 3939 Williams breached the implied duty of good faith and fair dealing in the rental agreement. Finally, Weaver contends that (6) the economic loss rule does not bar his tort counterclaim for gross negligence. We address each contention in turn.

### A.   Applicable Law and Standard of Review

¶ 9    Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c). "The moving party has the initial burden to show that there is no genuine issue of material fact." *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1029 (Colo. 1998). When the moving party meets its initial burden, the burden then shifts to the nonmoving party, who must "establish that there is a triable issue of fact." *Id.* While the nonmoving party is "entitled to all favorable inferences that may be drawn from the undisputed facts," *id.*, the nonmoving party "may not rest upon the mere allegations or denials of the [moving] party's pleadings, but[,]

. . . by affidavits or [as] otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial," C.R.C.P. 56(e).

¶ 10    "We review de novo an order granting summary judgment." *McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶ 44.

### B.    Breach of Contract Claims

¶ 11    Weaver contends that the trial court erred by resolving 3939 Williams's breach of contract claim and his breach of contract counterclaim against him.  He argues that the evidence attached to the summary judgment briefing showed several genuine issues of material fact, which precluded summary judgment.  Specifically, he asserts that there were genuine issues about whether 3939 Williams kept the premises in "broom-clean" condition, breached the agreement first so that he was excused from paying rent, and committed gross negligence.

¶ 12    While Weaver argues extensively over the contents of the materials he presented with the summary judgment briefing, the trial court disregarded all those materials as not complying with the procedural rules when it made its ruling.  Specifically, the trial court concluded that the exhibits were deficient because they

6

weren't sworn affidavits and they didn't comply with section 13-27-106. Reviewing the court's summary judgment ruling de novo, *see McDonald*, ¶ 44, we first address whether the court properly excluded these materials.

### 1. Applicable Law

¶ 13 A motion for summary judgment can be supported by "pleadings, depositions, answers to interrogatories, . . . admissions on file, [and] affidavits." C.R.C.P. 56(c). "[S]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." C.R.C.P. 56(e). Copies of all papers must also be "[s]worn or certified." *Id.*

¶ 14 Affidavits may be made under oath "before any officer authorized by law." C.R.C.P. 108; *see also Otani v. Dist. Ct.*, 662 P.2d 1088, 1090 (Colo. 1983) ("An affidavit is a signed, written statement, made under oath before an authorized officer, in which the affiant vouches that what is said is true."). An unsworn declaration that complies with section 13-27-106 can substitute for an affidavit. *People v. Ramcharan*, 2024 COA 110, ¶ 31. Among

other requirements, an unsworn declaration must include the following statement: "I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct." § 13-27-106. "A court must disregard documents referred to in a motion for summary judgment that are not sworn or certified." *Cody Park Prop. Owners' Ass'n*, 251 P.3d at 4.

### 2. The Court Did Not Err By Excluding the Unsworn Materials

¶ 15 Weaver attached the Weaver exhibit and the Hayne exhibit to his summary judgment response. The Weaver exhibit included Weaver's statements, copies of text messages, and an email. In the exhibit, Weaver claimed that there were multiple instances of flooding and break-ins, 3939 Williams knew about these issues before it entered into the lease with Weaver, it did nothing to address these issues, and it breached the contract first by failing to keep the premises in "broom-clean" condition.

¶ 16 In the Hayne exhibit, Hayne stated that he was a plaintiff in an unrelated case against 3939 Williams (along with another defendant) and had incurred physical injuries while touring the warehouse that included Weaver's leased commercial storage space.

Hayne's injury had occurred about a month before 3939 Williams and Weaver entered into the rental agreement. Attached to the Hayne exhibit were two photos taken the day of his injury. One of the photos showed Hayne's elevated, injured leg; the other showed a puddle of water within the warehouse and "two metal grate-like objects placed across the puddle as a makeshift bridge."

¶ 17 There's little question that the two exhibits didn't constitute a proper evidentiary basis to resist summary judgment. For one thing, they weren't affidavits sworn under oath in front of an appropriate officer authorized by law. *See* C.R.C.P. 56(e), 108. And they didn't qualify as unsworn declarations because they omitted the statutorily required language that the statements were made "under penalty of perjury under the law of Colorado." § 13-27-106. Thus, the trial court did not err when it declined to consider these documents in its decision because the exhibits were "insufficient to raise disputed issues of material fact." *Credit Serv. Co. v. Dauwe*, 134 P.3d 444, 446 (Colo. App. 2005); s*ee Bjornsen v. Bd. of Cnty. Comm'rs*, 2019 COA 59, ¶ 23.

¶ 18 Weaver's argument that the court should have considered the photos, text messages, and email attached to the exhibits fares no

better.  Rule 56(e) requires "all papers or parts thereof" to be sworn or certified, and a court need not consider unauthenticated exhibits that do not comply with this rule.  *See Johnson v. Mountain Sav. & Loan Ass'n*, 426 P.2d 962, 963 (Colo. 1967).  Further, though Weaver argues that the text messages were independently admissible because they contained the "admissions" of an opponent, that's not what the rule contemplates.  In the context of the summary judgment rule, a party may rely on the response to a *request for admission.  See Cox v. Pearl Inv. Co.*, 450 P.2d 60, 71-72 (Colo. 1969).  Therefore, the court did not err by not considering the uncertified and unauthenticated photos, text messages, and email after it concluded that the exhibits they were attached to were not appropriate for consideration under Rule 56.

¶ 19    Finally, Weaver contends that the trial court erred when it failed to consider the "corrected" exhibits that he submitted with his motion to file a surreply.  One of the corrected exhibits had been notarized and the other included the required language under section 13-27-106.  He asserts that there were no substantive changes to the exhibits other than the notarization and additional language in compliance with section 13-27-106.

¶ 20    A trial court has discretion to permit a surreply. *See Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 860 (Colo. App. 2007). In general, "[a] surreply allows the nonmoving party on a motion for summary judgment to respond to new evidence and new legal arguments raised for the first time in the moving party's reply brief." *Id.* In denying the motion to amend, the trial court noted that 3939 Williams's reply brief merely addressed issues that Weaver had raised in his response. Weaver doesn't contest this portion of the order in his appellate briefing; instead, he argues only that 3939 Williams would not have been prejudiced had the court permitted the surreply.[2] Maybe so, but under the abuse of discretion standard, we ask "not whether we would have reached a different result but, rather, whether the trial court's decision fell within a range of reasonable options." *E-470 Pub. Highway Auth. v. Revenig*, 140 P.3d 227, 230-31 (Colo. App. 2006). It did, and we cannot say

---

[2] Weaver argues for the first time in his appellate reply brief that a lack of prejudice is the sole argument required to establish an abuse of discretion. However, that argument is not developed. Therefore, we decline to consider it further. *See City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 480 (Colo. App. 2003) ("We do not consider arguments raised for the first time in a reply brief."); *see also Sanchez v. Indus. Claim Appeals Off.*, 2017 COA 71, ¶ 41 (declining to address underdeveloped arguments).

11

on this record that the trial court's ruling is manifestly unreasonable, arbitrary, or unfair, or that it misapplies the law. *See Migoya v. Wheeler*, 2024 COA 124, ¶ 23 (outlining the abuse of discretion standard). Therefore, we conclude that the trial court did not abuse its discretion when it denied Weaver's motion to file a surreply to the motion for summary judgment.

¶ 21 In sum, the court did not err by not considering the unsworn and uncertified exhibits and attached materials that Weaver submitted with his summary judgment response. We therefore must reject all of Weaver's contentions that are addressed to the contents of those materials, including that the materials created genuine issues of material fact regarding whether 3939 Williams kept the premises in "broom-clean" condition, breached the agreement first, or committed gross negligence.

### C. Waived Affirmative Defenses

¶ 22 Weaver contends that 3939 Williams "made numerous misrepresentations . . . and fraudulently induced . . . [him] to enter into a contract." Specifically, he claims that 3939 Williams failed to inform him regarding "the deplorable state of disrepair of the [p]remises prior to entering the [a]greement," the building's

susceptibility to flooding, the building's previous break-ins, and the building's susceptibility to future break-ins.

¶ 23 Weaver also contends that 3939 Williams breached the implied duty of good faith and fair dealing when it negotiated the rental agreement. The breach of this duty, he argues, is a question of fact that the jury must resolve. We disagree.

### 1. Additional Background

¶ 24 In Weaver's answer, he included an affirmative defenses section, in which he stated that

> [3939 Williams] breached the terms of the [rental agreement] through its failure to disclose the issues with the roof at the [p]remises[,] which would likely be considered a hidden defect not fully visible at any inspection unless the initial inspection were to be conducted on a day that it was raining. It is possible that this issue was fraudulently concealed. [Weaver] reserves the right to bring a claim for fraud, specifically fraudulent concealment, should further information become discoverable.

¶ 25 On the same day that summary judgment briefing closed, Weaver moved to amend his answer and counterclaims to assert a fraudulent concealment counterclaim. He claimed that 3939 Williams knew about the issues with water entering the warehouse

13

due to the roof being "in a total state of disrepair."  He also sought to add a counterclaim for punitive damages.  However, Weaver did not seek to amend his affirmative defenses in the motion.

¶ 26    The trial court denied Weaver's motion as untimely and noted that the "request to amend to add a fraudulent concealment/nondisclosure claim [was] futile as it could not withstand a motion to dismiss."  Weaver does not challenge the court's ruling on his motion to amend.

¶ 27    Weaver did not include any statement in his original answer (or his proposed amended answer) addressing a violation of the implied duty of good faith and fair dealing.  The first time he addressed that theory was in his summary judgment response, where he claimed that 3939 Williams violated its implied duty of good faith and fair dealing by failing to disclose "flooding and theft at the [p]remises prior to the agreement being entered into."

¶ 28    In its summary judgment order, the trial court concluded that Weaver waived the breach of good faith and fair dealing affirmative defense by failing to include it in his answer.  The trial court further concluded that the duty could not be breached before a contract was formed, and there was "no evidence supporting the contention

14

that a factual dispute exist[ed]" on this point.  Accordingly, the court rejected Weaver's argument.

### 2. Applicable Law and Standard of Review

¶ 29 Fraudulent inducement is an affirmative defense.  *Calvert v. Mayberry*, 2019 CO 23, ¶ 33 n.9.  Likewise, a breach of the implied covenant of good faith and fair dealing may be treated as an affirmative defense.  *Soicher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 46, ¶¶ 10, 23, 26 (comparing noncooperation and a breach of the duty of good faith and fair dealing as affirmative defenses).

¶ 30 A party must assert an affirmative defense in its responsive pleading (or amended responsive pleading) or the defense is waived. *Dinosaur Park Invs., L.L.C. v. Tello*, 192 P.3d 513, 517 (Colo. App. 2008).  While C.R.C.P. 15(a) permits a party to amend a pleading to which no response is permitted within twenty-one days after it is filed, the party must obtain leave of court after that time.

### 3. Weaver Waived His Fraudulent Inducement and Breach of the Duty of Good Faith and Fair Dealing Affirmative Defenses

¶ 31 Reviewing the court's summary judgment ruling de novo, *McDonald*, ¶ 44, we perceive no error.  Weaver didn't assert a fraudulent inducement affirmative defense in his answer.  Instead,

15

he "reserved" the right to bring one in the future. But he hadn't done so before the court ruled on the motion for summary judgment. Likewise, Weaver didn't include any reference in his answer to a breach of the implied duty of good faith and fair dealing.[3] Because Weaver did not assert either affirmative defense in his answer, they were waived. *See Soicher*, ¶ 21 ("An affirmative defense must be specifically asserted in a party's responsive pleading or it is waived."). Thus, the trial court did not err by reaching the same conclusion.

### D. Tort Counterclaim and the Economic Loss Rule

¶ 32    Weaver contends that the economic loss rule does not bar his gross negligence tort counterclaim because the rental agreement allows him to recover for damages caused by 3939 Williams's gross negligence. He argues, somewhat confusingly, that his claim is "purely contractual," and therefore the economic loss rule does not

---

[3] Weaver acknowledges that the conduct he claims constituted the breach occurred thirty-six days before the parties entered into the rental agreement. As the trial court pointed out, it is only *existing* contracts that contain the implied duty of good faith and fair dealing. *See New Design Constr. Co. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1181 (Colo. App. 2008). Without a contract in place, 3939 Williams had no implied duty to breach.

apply. But he identifies no independent duty of care under tort law that could support such a claim. Accordingly, we disagree with his contention.

¶ 33 "[T]he economic loss rule is intended to maintain the boundary between contract law and tort law." *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1259 (Colo. 2000). Therefore, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Id.* at 1264. If a duty of care is memorialized in an agreement, "then no duty exists independent of the contract, and the economic loss rule will apply to bar a tort claim." *Mid-Century Ins. Co. v. HIVE Constr., Inc.,* 2025 CO 17, ¶ 25. Willful and wanton tort claims are not excepted from the economic loss rule. *Id.* at ¶ 26. We review de novo whether the economic loss rule applies to a claim. *Id.* at ¶ 21.

¶ 34 Weaver's second counterclaim is titled "Gross Negligence." It alleges facts similar to those described above: 3939 Williams was grossly negligent because it was aware of the faulty roof and break-ins and did not adequately address them. Weaver alleged that he "suffered considerable damages as a result of [3939 Williams's]

17

gross negligence." Weaver identifies no duty of care that 3939 Williams owed to him other than those arising from the rental agreement. To the contrary, he argues that his claim is "*purely contractual.*" We agree with this last assertion. However, that means that while Weaver could have properly maintained a breach of contract claim, the economic loss rule bars his tort counterclaim for gross negligence. *See id.* at ¶ 25.

### E. Attorney Fees

¶ 35 3939 Williams asks for an award of its attorney fees and costs incurred on appeal. It claims that Weaver's appeal was frivolous as filed for several reasons: Weaver claimed that he was entitled to $2.8 million in damages, without providing any documentation as to the expenses incurred; Weaver failed to cite any authority or record support for his gross negligence counterclaim and fraudulent concealment defense; and Weaver's breach of the duty of good faith and fair dealing claim was invalid.

¶ 36 An appeal "is frivolous as filed when there are no legitimately appealable issues because the judgment below 'was so plainly correct and the legal authority contrary to the appellant's position

so clear.'" *Calvert*, ¶ 45 (quoting *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006)).

¶ 37    While perhaps a close call, we can't say that Weaver's appeal — as a whole — is frivolous as filed. Some of his arguments are clearly contrary to binding authority. However, he also presents some legitimate appealable issues. Considering the entire appeal, we deny 3939 Williams's request for appellate attorney fees.

¶ 38    3939 Williams is, however, entitled to its costs on appeal. *See* C.A.R. 39(a)(2). It may seek those costs in the trial court as provided by C.A.R. 39(c).

### III.    Disposition

¶ 39    The judgment is affirmed.

JUDGE FOX and JUDGE SULLIVAN concur.