**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 30, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PEGGY GREEN,

        Plaintiff - Appellant,

    v.

STATE OF NEW MEXICO,
DEPARTMENT OF LABOR and SUSAN
SOSAYA, Supervisor/VI Examiner II/III
Unit, in her individual capacity,

        Defendants - Appellees.

No. 04-2160

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CIV-03-0154 JB/RHS)**

---

Dennis W. Montoya, Montoya Law, Inc., Rio Rancho, New Mexico, appearing for
Plaintiff-Appellant.

Gregory Biehler (Marcia E. Lubar on the brief), Beall & Biehler, An Association,
Albuquerque, New Mexico, appearing for Defendants-Appellees.

---

Before **TACHA**, Chief Circuit Judge, **EBEL**, and **McCONNELL**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

Plaintiff-Appellant Peggy Green sued her former employer, Defendant-Appellee State of New Mexico Department of Labor ("DOL"), and her former supervisor, Susan Sosaya, alleging discriminatory discharge on the basis of sex in violation of (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; (2) the New Mexico Human Rights Act ("NMHRA"), N.M. Stat. Ann. § 28-1-1 et seq.; and (3) 42 U.S.C. § 1983. The Defendants moved for summary judgment on all claims, Ms. Green responded,[1] and the Defendants replied. After the District Court refused to grant Ms. Green leave to file a written surreply, it granted the Defendants' motion on the basis that Ms. Green had failed to establish a genuine issue of material fact on whether the DOL's proffered reasons for firing her were pretextual. Ms. Green timely appeals this ruling, as well as the District Court's decision regarding the surreply. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

The DOL hired Ms. Green as a probationary employee on October 22, 2001. Her probationary status was to last one year. Until August 2002, Ms. Green's immediate supervisor was Maggie Neel. Under Ms. Neel's supervision, Ms. Green was never formally disciplined, although she was verbally reprimanded for allowing her boyfriend and fellow DOL employee, Daniel Griego, to visit her at her office. Ms. Neel advised

---

[1]Ms. Green did not, however, respond to the motion regarding the NMHRA claim, so the District Court deemed that Ms. Green acquiesced in its dismissal. *See* D.N.M.L.R.-Civ. 7.1(b). Ms. Green does not appeal this ruling.

Ms. Green that Mr. Griego was not to return to her office because his presence was disruptive.

In August 2002, Susan Sosaya became Ms. Green's supervisor. On August 30, 2002, Ms. Sosaya issued Ms. Green a written reprimand for the following conduct: (1) allowing Mr. Griego to return to her office after Ms. Neel instructed her not to;[2] (2) keeping work in her desk, in contravention of DOL's policy to keep files accessible to all employees; (3) bringing questions and concerns with assignments to coworkers, rather than to Ms. Sosaya, and becoming argumentative and defensive when instructed that this was not proper procedure; and (4) improperly filling out forms. The reprimand instructed Ms. Green that "[a]n immediate improvement in your behavior is expected or you will be subject to dismissal during your probationary period."

Nevertheless, Ms. Green continued to have problems at work. Contrary to the explicit instruction in her reprimand, Ms. Green did not refrain from discussing concerns she had with her assignments with employees other than Ms. Sosaya. Specifically, in October 2002, Ms. Green discussed a concern she had with a specific assignment with

---

[2]Ms. Green disputes that Mr. Griego returned to her office after the warning. We note that a challenge of pretext requires a court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000); *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1322 n.12 (10th Cir. 1992) ("[A] mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual."). We find, however, that this dispute is not material in this case because Ms. Green was not fired for allowing Mr. Griego to return to her office; rather, she was fired for her ongoing failure to follow instructions subsequent to her written reprimand.

Jackie Martinez, another supervisor at the DOL.  In addition, also in October 2002, Ms. Green failed to complete a task assigned to her by Ms. Sosaya.  When Ms. Sosaya asked why the assignment had not been finished, Ms. Green simply claimed not to remember anything about it.  That day, Ms. Sosaya recommended Ms. Green for dismissal, citing these two incidents.  Ms. Green was terminated on October 11, 2002.

## II.  DISCUSSION

A.    Title VII Disparate Treatment

We review the District Court's entry of summary judgment de novo.  *Plotke v. White*, 405 F.3d 1092, 1093 (10th Cir. 2005).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party.  *Plotke*, 405 F.3d at 1093–94.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  Because Ms. Green relies on circumstantial evidence to establish unlawful discrimination, we apply the now-familiar three-step burden-shifting framework set forth in *McDonnell Douglas* and its progeny. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–07 (1973); *Plotke*, 405 F.3d at

1099. The aggrieved employee must first establish a prima facie case of prohibited employment action. *Plotke*, 405 F.3d at 1099. If the employee makes such a prima facie showing, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer meets this burden, then "summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Id.*

The parties agree that Ms. Green has met her burden to establish a prima facie case of discrimination.[3] It is therefore incumbent on the DOL to proffer a legitimate, nondiscriminatory reason for firing Ms. Green. The DOL asserts that Ms. Green was fired for violations of the DOL's Code of Conduct,[4] insubordination, and for failing to perform her job satisfactorily. More specifically, the DOL asserts that after Ms. Green received a written reprimand in August regarding deviations from the chain of command and violations of the code of conduct, she thereafter failed to follow Ms. Sosaya's specific instructions not to discuss her job duties with other employees and failed to complete a particular task, claiming that she did not know what Ms. Sosaya wanted her to

[3]Because the Defendants never argued that Ms. Green was terminated because her position was eliminated, a prima facie case here requires a showing that (1) Ms. Green belongs to a protected class; (2) she was qualified for her job; and (3) despite her qualifications, she was discharged. *See Plotke*, 405 F.3d at 1099–1100.

[4]The DOL's Code of Conduct provides, in relevant part, "[A]ll employees are expected to maintain the highest standards of personal conduct at all times[,] . . . must cooperate with their supervisors, follow instructions, and perform work in a professional and competent manner[,] . . . [and] maintain an attitude of courtesy and service to other state employees." Ms. Green received the Code of Conduct the day she was hired.

do. The DOL has therefore met its burden to provide a nondiscriminatory reason for firing Ms. Green. As a result, the burden shifts back to Ms. Green to establish a genuine issue of material fact as to whether the DOL's proffered reasons are pretextual.

A plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted). Although "a plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual," *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (alterations omitted), pretext is typically shown in one of three ways:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

*Id.* (internal citations omitted).

Ms. Green makes several arguments in support of her claim that the DOL's justification for her discharge is pretextual. She argues that the reasons for her termination were false, that similarly situated men were not fired for equally serious

conduct, that she was subjected to "heightened scrutiny," that the decision to fire her was based on subjective criteria, and that she was fired immediately prior to the completion of her probationary employment, all of which support an inference that the DOL's proffered reasons were a pretext for discrimination. We disagree.

1.      Falsity of Proffered Nondiscriminatory Reason

Ms. Green argues that the DOL's assertion that she was fired for failing to satisfactorily perform her job is false. In support of this contention, Ms. Green claims that her performance evaluations indicate she was a good employee and therefore could not have been fired for job-related issues. This Court has previously found evidence of pretext when there were, among other things, "glaring contradictions" between the plaintiff's evaluations and the employer's proffered reason for taking the adverse action. *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1380 (10th Cir. 1994). In addition, we have noted that memoranda from supervisors praising the plaintiff on an issue later claimed to be the reason for the adverse action may be evidence of pretext. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 564 (10th Cir. 1996).

In this case, however, neither situation is present. The DOL evaluates its employees using a five-point scale with a score of one being "unsatisfactory" and five being "exceptional." The average score, three, is considered "successful." Green mainly received fours and fives on productivity-related questions, and her written evaluations are largely favorable. Nevertheless, as the District Court noted, these favorable evaluations

do not contradict the DOL's proffered reason for firing her: that she failed to follow instructions. It was in this regard—as opposed to her productivity—that she did not perform satisfactorily.

Both *Cole* and *Greene* are readily distinguishable from the case at bar. In *Greene*, the defendant employer's proffered reasons for terminating the aggrieved employee was that he was a poor merchandiser, his stores' sales were declining, he was "pessimistic" about the company's biggest competitor, and he intimidated his staff. 98 F.3d at 556. The record, however, contained a number of memoranda praising the plaintiff for "fine results" in the year he was fired, and stating that the plaintiff's efforts served "as a model of how [Safeway] need[s] to pursue change going forward." *Id.* at 564. In contrast, none of Ms. Green's performance evaluations speak to her ability to follow her supervisor's instructions, which was the basis for her termination. Moreover, in *Greene*, the employer never mentioned any of the alleged problems with the plaintiff's performance before it fired him, *see id.*, whereas the DOL documented Ms. Green's deficiencies and warned her that subsequent infractions could lead to termination during her probationary period.

In *Cole*, the employer's proffered reason for firing the plaintiff was her inability to resolve faculty disputes that had begun to affect the quality of education at the school. 43 F.3d at 1378. Contemporaneous evaluations of the plaintiff's performance, however, gave her the highest possible marks on whether she "establishes and maintains, with cooperation of the staff, an environment conducive to learning." *Id.* at 1380. And during

the plaintiff's tenure as principal, the students' test scores rose from the 43rd percentile to the 73rd percentile. *Id.* at 1381. The Court noted, "[this] evidence . . . tends to contradict defendants' statements that the quality of education suffered while [the plaintiff] was principal." *Id.* Furthermore, during the course of the proceedings, the defendant changed its explanation for the adverse employment action. Initially the defendant said it removed the plaintiff because of budgetary constraints, but after the plaintiff filed her complaint with the EEOC, it cited problems with the staff and the declining quality of education. *Id.* at 1380–81. There is no such contradictory evidence here, nor has the DOL ever wavered in its reasons for firing Ms. Green.

Ms. Green also argues, however, that Ms. Sosaya never instructed her not to speak with Mr. Martinez specifically, and that Ms. Green therefore did not break any rules or instructions by going to Mr. Martinez with work-related concerns. We disagree. Even if Ms. Sosaya did not explicitly instruct Ms. Green not to speak with Mr. Martinez about her work assignments, it is undisputed that Ms. Green was expressly warned, by written reprimand on August 30, 2002, that "if you have a question or issue with something I give you, you need to bring your concerns to me instead of a co-worker" and that future infractions could lead to her termination. Ms. Green does not dispute that she continued taking her concerns about assignments to others. As such, she has not established a genuine issue of material fact on the falsity of the DOL's proffered explanation for firing her.

2.      Similarly Situated Employees

As discussed above, a plaintiff may show pretext "by providing evidence that he was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness." *Kendrick*, 220 F.3d at 1232. A similarly situated employee is one who "deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." *Id.* Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly situated. *Id.* Ms. Green argues that there are two similarly situated males who were treated differently than she, which is evidence that the DOL's proffered reasons for terminating her are pretext for an unlawful motive.

First, Ms. Green suggests that Mr. Griego is a similarly situated employee. Mr. Griego is not similarly situated to Ms. Green under this circuit's precedent. Not only did he not share the same supervisor as Ms. Green, but he was actually a supervisor in an entirely different DOL unit. Moreover, he, unlike Ms. Green, was not a probationary employee.

Second, Ms. Green argues that Juan Garcia was a similarly situated employee. Again, however, Ms. Sosaya was not Mr. Garcia's supervisor. In addition, although Mr. Garcia held the same position as Ms. Green (Examiner III), he was promoted to the position five years before the events giving rise to this lawsuit took place. At the time he

was promoted to the Examiner III position, he had already been a DOL employee for over three years, and thus he was not a probationary employee. The District Court concluded, and we agree, that neither Mr. Griego nor Mr. Garcia were similarly situated employees and therefore Ms. Green has failed to establish a genuine issue of fact as to pretext on this basis.

3.      "Heightened Scrutiny"

Ms. Green asserts that "the sheer number of . . . minor complaints" suggests that she was subjected to a higher level of scrutiny than other employees, from which a jury could conclude that "the Defendants were out to 'get' Ms. Green." No Circuit precedent supports this contention. Moreover, the sole case upon which Ms. Green relies, *Crawford v. Roadway Express, Inc.*, 485 F. Supp. 914 (W.D. La. 1980), is not on point. In *Crawford*, the allegedly adverse action taken against the employee was the unwarranted heightened scrutiny. *Id.* at 921–22. The plaintiff did not, as Ms. Green attempts to do here, argue that being subject to heightened scrutiny constitutes evidence of pretext. Ms. Green's argument premised on "heightened scrutiny" is therefore without merit.

4.      Use of Subjective Criteria

Ms. Green next argues that she is entitled to an inference of discrimination because the DOL relied on subjective criteria (i.e., that she was "disrespectful" and engaged in "inappropriate" conduct) to fire her. Although we have held that the use of subjective criteria in employment decisions may be used as evidence of pretext, *see Burrus v. United*

*Tel. Co. of Kan., Inc.*, 683 F.2d 339, 342 (10th Cir. 1982), we have consistently recognized that such criteria "must play some role" in certain management decisions and accordingly have reviewed the use of subjective factors on a case-by-case basis. *See Pitre v. W. Elec. Co.*, 843 F.2d 1262, 1272 (10th Cir. 1988) (stating that the use of subjective factors "does not per se constitute discrimination."). We have concluded, for example, that the use of subjective criteria, when coupled with the fact that those making the employment decisions were not members of the protected group and had engaged in past discrimination, could properly be considered evidence of discrimination. *Id.* We have also noted that subjective criteria may provide evidence of pretext when it is used to evaluate candidates that are not objectively equally qualified. *Colon-Sanchez v. Marsh*, 733 F.2d 78, 81 (10th Cir. 1984). Recently, we stated that we "typically infer pretext . . . only when the criteria on which the employers ultimately rely are *entirely* subjective in nature." *Jones v. Barnhart*, 349 F.3d 1260, 1267–68 (10th Cir. 2003) (emphasis added).

After reviewing the record in this case, we find no merit to Ms. Green's contention. To begin, Ms. Green was evaluated and reprimanded by another woman, Ms. Sosaya. Ms. Sosaya is a member of the same protected class—women—as Ms. Green. Moreover, there is nothing in the record indicating that Ms. Sosaya had engaged in discriminatory conduct in the past. Finally, it is clear that objective factors—either standing alone or in conjunction with subjective factors—were used to justify Ms. Green's termination. The reprimand states that Ms. Green should refrain from discussing

work-related concerns with anyone other than Ms. Sosaya, and Ms. Green does not dispute that thereafter she sought advice about a problem at work with Mr. Martinez. As such, Ms. Green is not entitled to an inference of discrimination based on any alleged use of subjective criteria to justify her termination.

5.      Timing of Termination

Finally, Ms. Green maintains that the timing of her termination, which occurred eleven days before her probationary period expired, warrants an inference of gender-based discrimination. She suggests that the mere fact that she was fired within weeks of the expiration of her probationary period of employment, after which New Mexico provides due process prior to effectuating termination, indicates that the DOL's proffered reasons for firing her were pretextual and thereby establishes discrimination. Ms. Green does not cite, nor have we found, any authority for this proposition. We are thus not persuaded that the timing of her termination establishes a genuine issue of fact as to pretext.

In sum, the DOL justified its termination of Ms. Green by explaining that she failed to follow her supervisor's instructions, in contravention to the DOL's Code of Conduct and Ms. Sosaya's explicit direction. Ms. Green has not come forth with evidence that a similarly situated employee was treated differently, nor has she produced other evidence that reveals "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its

action that a reasonable factfinder could rationally find them unworthy of credence."

*Morgan*, 108 F.3d at 1323 (quotations omitted). We therefore affirm the District Court's grant of summary judgment against Ms. Green on her Title VII claim.[5]

B.      The Surreply

On May 20, 2004, the DOL filed a reply brief supporting its motion for summary judgment. Ms. Green moved for leave to file a written surreply on June 10, 2004, at the hearing on the motion for summary judgment. The District Court denied the plaintiff's motion and granted the DOL's motion for summary judgement that day. Ms. Green argues that she should have been permitted to file a written surreply.

We review the District Court's decision for abuse of discretion. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998). Generally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply. *Id.* If the district court does not rely on the new material in reaching its decision, however, "it does not abuse its discretion by precluding a surreply." *Id.* at 1164–65. "Material," for purposes of this framework, includes both new evidence and new legal arguments. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003).

In this case, the DOL did not raise any new legal arguments in its reply brief. Its

---

[5]Because Ms. Green does not allege any other statutory or constitutional violation, we similarly affirm the District Court's dismissal of her § 1983 claim as well.

-14-

main purpose is to point out the defects in Ms. Green's response and why she had failed to establish a genuine issue of material fact. And although the DOL did attach new materials to its reply—namely, additional portions of Ms. Sosaya's deposition and an affidavit of Mr. Martinez[6]—a review of the record reveals that the District Court did not rely on these new materials in granting summary judgment for the DOL. As such, the District Court did not abuse its discretion in denying Ms. Green's motion to file a written surreply.[7]

## III. CONCLUSION

Because Ms. Green failed to raise a genuine issue of material fact as to whether she was discriminated against because of sex, we AFFIRM the District Court's entry of summary judgment in favor of the DOL. We also conclude that the District Court did not abuse its discretion in denying Ms. Green's motion to file a written surreply and therefore AFFIRM that decision as well.

---

[6]We note that Ms. Green's surreply, included in the record, does not offer any evidence to rebut the materials supplied by the DOL in its reply brief.

[7]The District Court, however, denied the motion to file a written surreply because the court had "allowed the Plaintiff a full opportunity at the hearing to make any [surreply] arguments." The DOL argues that such an opportunity meets the implicit requirement in Fed. R. Civ. P. 56(c) that "the district court . . . allow the nonmoving party an opportunity to respond before summary judgment is entered against it." *Beaird*, 145 F.3d at 1163. Because we conclude that the District Court did not rely on any of the materials in the reply brief, however, we need not decide this issue. *See Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000) ("[W]e may affirm the district court for any reason supported by the record.").

04-2160, <u>Green v. New Mexico Department of Labor</u>

**EBEL, J.,** dissenting:


I respectfully dissent because I believe there is just barely enough evidence in this case to raise genuine disputes of fact. Therefore, I think it was inappropriate to enter a summary judgment for the defendant.

Of the two reasons asserted for firing Ms. Green, counsel for the defendant on appeal admitted that the first reason (that she did not make copies on one occasion) was trivial. As to the second reason – that she went to another supervisor – I think there is a genuine dispute of fact. It is not at all clear from this record that her conversation with Mr. Martinez was of a nature that would be considered contrary to the instruction that she bring her concerns to Ms. Sosaya rather than to a coworker. I also believe that her evidence of heightened scrutiny might be considered evidence of pretext.

I agree that Ms. Green's case is very thin, but I believe it is enough to avoid summary judgment at this stage in the proceedings.