FILED
United States Court of Appeals
Tenth Circuit

June 12, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CURTIS MAUGHAN,

        Plaintiff-Appellant,

v.

ALASKA AIRLINES, INC.,

        Defendant-Appellee.

No. 07-6198
(D.C. No. 5:06-CV-00705-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **PORFILIO**, and **BALDOCK**, Circuit Judges.


Curtis Maughan appeals the district court's grant of summary judgment in

favor of his former employer, Alaska Airlines, in this action under the Age

Discrimination in Employment Act (ADEA).  We have jurisdiction under

28 U.S.C. § 1291.  Because Maughan has presented some evidence that, if

believed, may show that Alaska's proffered reason for terminating his

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

employment was a pretext for age discrimination, and Alaska has not presented abundant and uncontroverted evidence that no discrimination occurred, we REVERSE and REMAND for further proceedings in the district court.[1]

## I.

Alaska Airlines employed Maughan as a Quality Control (QC) Representative and Quality Control Supervisor/Representative from March 1, 2001, until April 20, 2005. The QC department is responsible for overseeing the maintenance work that vendors perform on Alaska's airplanes. Maughan's duties included supervising the QC Inspectors who monitored a particular Oklahoma City vendor's work. Beginning in mid-2003, his supervisor was Kelly Robinson, Alaska's Quality Control Manager.

In December 2004, Maughan applied for another position within Alaska, Quality Assurance (QA) Auditor.[2] During Maughan's interview, a panel member asked him about his five-year goals. Then age 60, he stated that he planned to be

---

[1]    The district court indicated it was unclear whether Maughan intended his lawsuit to challenge his December 2004 failure to receive a position in another Alaska department, as well as the March 2005 termination of his employment with Alaska. Maughan's arguments on appeal focus solely on the propriety of granting summary judgment with regard to the termination. Consequently, any arguments concerning his failure to receive the other position have been waived. *See Lindstrom v. United States*, 510 F.3d 1191, 1195-96 (10th Cir. 2007).

[2]    The record indicates that Quality Assurance and Quality Control are different departments. Quality Assurance works on creating maintenance plans for Alaska's airplanes, in accordance with governmental and manufacturer's requirements and recommendations, while Quality Control is responsible for ensuring that the plans created by Quality Assurance are implemented.

retired within five years, and that he would be eligible for retirement in about one-and-a-half years. He was not selected for the QA position.

He later asked Robinson why he had not been selected. On or about March 15, 2005, Robinson told him that "word on the street" was that he did not get the QA position because he told the panel that in five years he was going to be retired. Aplt. App. I at 74. Within a day, Robinson asked Maughan if he really was going to retire in a year, and Maughan said that was his plan. According to Maughan, after that point, "the relationship changed drastically." *Id.* at 69. Maughan states that Robinson "became very aggressive and very controlling and his whole attitude – his whole attitude changed towards me." *Id.* at 81. Robinson asserts that beginning in early 2005, after Maughan did not receive the QA position, he began noticing "serious work performance issues with [Maughan's] work as a QCR and the work under his supervision." *Id.* at 115.

On March 16, Robinson evaluated Maughan's performance.[3] On a written review form, Mr. Robinson marked Maughan as "Meeting most expectations" in the category of Initiative and "Not meeting expectations" in the categories of "Decision Making/Judgment" and "Problem Solving." *Id.* at 196. According to Robinson, he counseled Maughan about failures to meet expectations in certain areas and gave him specific examples of when he failed to perform to Robinson's

[3] Robinson states that the March 2005 performance evaluation occurred on March 2, 2005, but Maughan asserts that it occurred on March 16. We view the record in the light most favorable to Maughan as the non-moving party.

-3-

standards. Maughan disagrees, asserting that Robinson did not discuss any specifics with him at the meeting.

In early April 2005, Robinson visited Oklahoma City to observe Maughan's performance. According to Robinson, several incidents that occurred during this visit led him to conclude that Maughan failed to carry out his duties appropriately. Robinson recommended to his supervisor, Vince Hasson, that Maughan's employment be terminated. Hasson agreed, and the two consulted Scott Lautman, Alaska's human resources manager. Lautman counseled Robinson on how to handle the termination.

On April 20, 2005, Robinson informed Maughan that his employment was terminated effective immediately. He offered Maughan a severance package in exchange for a release. Maughan refused to sign the release and contacted Lautman. He informed Lautman that he believed he had been discriminated against and harassed because of his age. Alaska never conducted an investigation into Maughan's complaint of age discrimination and harassment.

After Maughan brought suit under the ADEA, Alaska moved for summary judgment. Applying the familiar *McDonnell Douglas* burden-shifting approach,[4] the district court held that Maughan had failed to establish a prima facie case of age discrimination because he did not present evidence that he had been replaced by a younger person or under circumstances leading to an inference of

---

[4]     *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

discrimination. It further held that, even assuming he presented a prima facie

case, Alaska had proffered a legitimate non-discriminatory reason for his

discharge, namely, poor performance. The district court concluded that he failed

to proffer evidence tending to show that Alaska's proffered reason was a pretext

for discrimination. Accordingly, it granted summary judgment to Alaska.

II.

### A. *Standard of review*

We have often stated the standard of review for summary judgment cases:

> We review the district court's grant of summary judgment de novo,
> applying the same standard used by the district court. Summary
> judgment is appropriate only if there is no genuine issue as to any
> material fact and the moving party is entitled to judgment as a matter
> of law. In making this determination, we view the evidence in the
> light most favorable to . . . the non-moving party, and draw all
> reasonable inferences in [his] favor.

*Riggs v. AirTran Airways*, 497 F.3d 1108, 1114 (10th Cir. 2007) (citations,

quotation, and alteration omitted).

### B. *Application of McDonnell Douglas Framework*

Maughan first argues that he presented direct evidence of age

discrimination, and so the district court erred in applying the *McDonnell Douglas*

burden-shifting scheme. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S.

111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the

plaintiff presents direct evidence of discrimination."). We have recognized that

an employment discrimination plaintiff may prove his or her case with direct or

with circumstantial evidence, with the *McDonnell Douglas* framework coming into play where a plaintiff relies on circumstantial evidence. *Adamson v. Multi Commun. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. [It] requires proof of an existing policy which itself constitutes discrimination or oral or written statements on the part of a defendant showing a discriminatory motivation." *Hall v. U.S. Dep't of Labor, Admin. Review Bd.*, 476 F.3d 847, 854-55 (10th Cir.), *cert. denied*, 128 S. Ct. 489 (2007) (quotations and citations omitted). "Our precedent makes clear that evidence is not 'direct' if an inference of discrimination is required." *Riggs*, 497 F.3d at 1118. "A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Hall*, 476 F.3d at 855 (quotation omitted).

Each piece of evidence that Maughan cites (Robinson's report about the reason he did not get the QA position, his inquiry about whether Maughan planned to retire, certain notes that Lautman wrote before the termination, and an e-mail message that Hasson wrote after the termination) requires an inference of discrimination or plausibly can be interpreted in two different ways. Because this evidence is not direct evidence of discrimination, the district court did not err in proceeding under the *McDonnell Douglas* burden-shifting procedure.

## C. Prima Facie Case

The district court first held that Maughan failed to establish a prima facie case "because he has failed to present evidence that the position from which he was terminated remained open or was filled by a younger person, or that he was terminated under circumstances giving rise to an inference of unlawful age discrimination, the fourth essential element of a *prima facie* case." *Maughan v. Alaska Airlines, Inc.*, CIV-06-705-R, slip op. at 4 (W.D. Okla. Aug. 24, 2007). But Maughan did present some such evidence, as his affidavit stated that he was replaced by a man who was forty years old. While the assertion otherwise is unsupported, Alaska did not controvert this evidence, so it stood unrebutted. Given that Maughan's burden at the prima-facie-case stage is de minimis, *see Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005), we conclude that Maughan established a prima facie case of age discrimination.

## D. Pretext

The district court further held that, even assuming that Maughan established his prima facie case, he failed to proffer evidence that tended to show that Alaska's legitimate, non-discriminatory reason for his discharge was a pretext for age discrimination.

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find

-7-

them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Riggs*, 497 F.3d at 1118 (quotation omitted). "'The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.'" *Plotke*, 405 F.3d at 1102 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). Evidence of pretext "'may take a variety of forms,'" including evidence tending to show "'that the defendant's stated reason for the adverse employment action was false'" and evidence tending to show "'that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances.'" *Id.* (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)). "The plaintiff's evidence can also allow for an inference that the employer's proffered non-discriminatory reasons were either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Id.* at 1102-03 (quotation and alteration omitted). Affording all reasonable inferences to Maughan, as we are required to do at the summary-judgment stage, there are several pieces of evidence favorable to Maughan.

Robinson's affidavit avers that he began noticing "serious work performance issues" with Maughan's work in early 2005. Aplt. App. I at 115. Robinson further admitted in his deposition that the termination "was solely based

-8-

on my observations between April 5th and 9th. It had nothing to do with previous job performance, because he had met expectations on all his performance appraisals." *Id.* II at 300. The record contains no documentation of performance problems in 2005, however, other than the March 2005 review, which occurred just after Robinson inquired about Maughan's retirement plans. While "many courts have recognized that an employer may make reasonable inquiries into the retirement plans of its employees," *Cox v. Dubuque Bank & Trust Co.*, 163 F.3d 492, 497 (8th Cir. 1998), this retirement inquiry did not stand alone; it came in conjunction with Robinson's statement that "word on the street" was that he had not received the QA job because of his retirement plans and, according to Maughan, with a change in Robinson's attitude towards him.

In addition, Alaska's summary judgment brief and Robinson's supporting affidavit highlight a particular incident as an example of Maughan's performance problems in early 2005. In his response brief, Maughan asserted that the incident actually occurred in October 2004, when, according to Robinson's evidence, he was performing acceptably. While Maughan's supporting affidavit does not address the timing of the incident, the March 2005 review states it occurred in October 2004. Alaska's reliance on a 2004 incident to help justify Maughan's termination, in the face of Robinson's testimony that the performance problems began in early 2005 and the termination led directly from the events of April 5-9, 2005, may lead to an inference of post hoc justification.

With regard to the March 2005 review, Maughan testified that he was presented with an eight-page review that he eventually signed and faxed back. Alaska has presented a nine-page review, however, with a signature that Maughan testified was not his, and copies of the review in the record appear to contain different signatures. We have identified falsifying or manipulating criteria as a disturbing procedural irregularity that may constitute evidence of pretext. *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005). Further, the ninth page, which Maughan testified was not attached at the review, sets forth specific examples of performance problems. If that page were not a part of the original review form, its addition may be viewed as a post hoc attempt to justify the termination. *See Plotke*, 405 F.3d at 1103 (stating that evidence that allows for an inference that the employer's proffered reason was a "post hoc fabrication" may establish pretext).[5] In addition, the March 2005 review criticizes Maughan's initiative, while Robinson praised his initiative in a December 2004 review submitted in connection with Maughan's application for the QA position. "[W]e have noted that memoranda from supervisors praising the plaintiff on an issue later claimed to be the reason for the adverse action may be

---

[5] Maughan also presented other evidence that may lead to inferences of post hoc justifications, including e-mail messages from Hasson and Lautman concerning a post-termination meeting and post-termination documentation of Maughan's performance.

evidence of pretext." *Green v. New Mexico*, 420 F.3d 1189, 1193 (10th Cir. 2005).

Maughan also disputes Robinson's account of the events of early April 2005 that Robinson testified led up to Maughan's dismissal. When analyzing a contention of pretext, this court examines "the facts as they appear to the person making the decision to terminate plaintiff." *Kendrick*, 220 F.3d at 1231. The relevant inquiry is whether the information reasonably believed by the decision-maker justified the action taken, not whether there might have been some error in the information. *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004). To the extent that Maughan argues that Robinson acted on incorrect information or was wrong, his disputes fail under these standards. In some respects, though, his disputes go beyond showing that Robinson's criticisms of his performance were unreasonable or based on mistakes, instead challenging the objective facts that Robinson says he relied on. For example, Maughan's and Robinson's descriptions of the incident that Robinson identified as his final straw differ. Further, it was Robinson's subjective evaluation of Maughan's performance that led to the termination. "Courts view with skepticism the use of subjective evaluations in making termination decisions." *Plotke*, 405 F.3d at 1106. "[T]he existence of subjective criteria alone is not considered evidence of pretext; rather, the existence of other circumstantial evidence may provoke a

stronger inference of discrimination in the context of subjective evaluation standards." *Riggs*, 497 F.3d at 1120.

Maughan also presented evidence that Alaska acted contrary to its written anti-harassment and discrimination policy, which provides for investigations of complaints. The record supports Maughan's assertion that he complained to Lautman that the termination of his employment was due to age discrimination and harassment. Lautman admitted that Alaska undertook no investigation of the complaint, but the record does not explain why.

This is a close case. Although the evidence described above may tend to undermine Alaska's proffered reason for the termination, it is not greatly persuasive. But even if Maughan has created "only a weak issue of fact as to whether the employer's reason was untrue," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), Alaska has not presented the corollary "abundant and uncontroverted independent evidence that no discrimination had occurred," *id.*, that would entitle it to judgment as a matter of law.

There is little "uncontroverted independent evidence" in this case. Alaska argues that Maughan was fifty-six years old, well within the protected category, when Alaska hired him in 2001. Robinson (age 44 in 2005) and Lautman (age 53 in 2005) also were in the ADEA-protected age group at the time of the termination. Robinson was Maughan's supervisor since mid-2003, and Maughan admits that they had a good relationship. During that time, the only age-related

comments he ever heard Robinson utter were the statements, "Come on, you old fart. Let's go to lunch," when the two would go to lunch, which they did frequently. Aplt. App. I at 100. Further, during the summer of 2004, Alaska offered a voluntary separation program, and Robinson told Maughan that he hoped he did not take it, because Robinson needed him in Oklahoma City.

This evidence does help negate an inference of pretext, but we cannot characterize it as "abundant." Consequently, Alaska is not entitled to judgment as a matter of law.

III.

"'[I]f a plaintiff advances evidence establishing a prima facie case and evidence upon which a factfinder could conclude that the defendant's alleged nondiscriminatory reasons for the employment decisions are pretextual, the case should go to the factfinder.'" *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005) (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir. 1994)). "In short, at the summary judgment stage, the inference of discrimination permitted by evidence of pretext must be resolved in favor of the plaintiff." *Id.* In this close case, Maughan's proffer is sufficient to establish his prima facie case and to establish an inference of pretext to defeat Alaska's motion for summary

-13-

judgment. The judgment of the district court is REVERSED and the case is REMANDED for further proceedings.

Entered for the Court


Bobby R. Baldock
Circuit Judge