FILED
United States Court of Appeals
Tenth Circuit

December 27, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

SIONE HOKO,

Plaintiff-Appellant,

v.

HUISH DETERGENTS, INC.,
n/k/a Sun Products Corporation,

Defendant-Appellee.

No. 11-4016
(D.C. No. 2:09-CV-00361-TS)
(D. Utah)

ORDER AND JUDGMENT[*]

Before **HARTZ**, Circuit Judge, **HOLLOWAY** and **PORFILIO**, Senior Circuit
Judges.

Sione Hoko appeals pro se the district court's grant of summary judgment

in favor of Huish Detergents, Inc. (Huish) on his Title VII and state-law claims.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. Background

Mr. Hoko, who identifies himself as Asian/Pacific Islander, worked for Huish from September 16, 1989, until his employment was terminated on June 27, 2005. His last position with Huish was as a Supervisor in the Raw Material Department. Huish's Policy Book, which Mr. Hoko received a copy of in 2004, included an Internet Policy stating that employees given access to the internet were required to use it for business purposes only and that personal use of the internet was not allowed. Mr. Hoko also signed a Computer Security Policy in 2004 acknowledging that Huish computer equipment was to be used only to conduct company business. The Computer Security Policy stated: "Employees found to be in violation of this policy are subject to disciplinary action, up to and including termination of employment." R., Vol. 2 at 43.

As of June 2005, Mr. Hoko had access to the internet from his Huish computer at a level consistent with his role as a Supervisor. Specifically, he had access to any website on the internet, with the exception of certain categories of sites that were deemed inappropriate. In his Supervisor position, Mr. Hoko was expected to spend only ten percent of his work time sitting. In May and June 2005, Mr. Hoko's supervisor, Shane McPhie, heard that he was spending a lot of time in the Supervisor's office. Mr. McPhie asked the Information Technologies Department to monitor Mr. Hoko's use of the internet for a period of time. An audit was approved by the Human Resources Department, and the audit report

showed that, from June 12 through June 22, 2005, Mr. Hoko repeatedly visited non-work-related internet sites for extended periods of time during his work day. A subsequent audit showed that Mr. Hoko was on the internet on non-work-related sites for several hours during a later shift. On June 27, 2005, Mr. McPhie and Debbie Mair, Huish's Director of Human Resources, met with Mr. Hoko and terminated his employment. They explained that his termination was based on the excessive amount of time he had been spending on the internet.

About two weeks later, Mr. Hoko returned an exit-interview form to Huish. On that form he complained that Mr. McPhie had yelled at him, had applied the company's computer-use policy in a discriminatory manner, and had fired him in retaliation for complaining about discrimination. Huish investigated Mr. Hoko's allegations, including interviewing two employees who Mr. Hoko said had witnessed Mr. McPhie yelling at him. Neither witness supported Mr. Hoko's claims regarding yelling or discrimination by Mr. McPhie. One witness did state that he was forced to do Mr. Hoko's job for him. The other witness estimated that Mr. Hoko spent 80% of his time on his computer. Mr. McPhie also denied Mr. Hoko's allegations.

Mr. Hoko filed a charge with the Utah Anti-discrimination and Labor Division and the Equal Employment Opportunity Commission. He filed this action after the administrative-claims process concluded. In his second amended complaint, he alleged claims for race, color, and national-origin discrimination,

-3-

harassment/hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a). He also alleged a state-law claim for wrongful termination. Huish moved for summary judgment on all claims, and the district court granted the motion on December 21, 2010. Mr. Hoko filed a timely appeal.

## II. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008) (quotation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We examine the factual record and draw all reasonable inferences in the light most favorable to the non-moving party." *Somoza*, 513 F.3d at 1211. We construe Mr. Hoko's pro se appeal arguments liberally. *See de Silva v. Pitts*, 481 F.3d 1279, 1283 n.4 (10th Cir. 2007).

## III. Discussion

In its thorough and well-reasoned order, the district court reviewed the elements for each of Mr. Hoko's claims and the evidence, or lack thereof, in support of each claim. Like the district court, we will address each of Mr. Hoko's claims in turn.

## A. Discriminatory Harassment/Hostile Work Environment

Mr. Hoko alleged that Huish subjected him to harassment and a hostile work environment based upon his race, color, and national origin. In order to recover on such a claim, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004) (quotation omitted).

The district court held that Mr. Hoko failed to identify any statement made by any agent of Huish that could constitute discrimination on the basis of race. Mr. Hoko claimed that Mr. McPhie harassed him by yelling at him following a glycerin spill that had occurred during Mr. Hoko's shift. But the district court held there was no evidence that Mr. McPhie's alleged conduct was based on racial animus. *See Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1139 (10th Cir. 2008) (addressing claim of racially hostile work environment and stating "harassment must be racial or stem from racial animus" (brackets omitted)); *Sandoval*, 388 F.3d at 1327 (requiring "evidence from which a rational jury could infer that [plaintiff] was targeted for harassment because of her gender, race, or national origin"). The district court further concluded that, even if Mr. McPhie's conduct in yelling at Mr. Hoko was racially motivated, this one isolated incident was neither sufficiently severe nor sufficiently pervasive to support a claim for

harassment/hostile work environment. *See Sandoval*, 388 F.3d at 1327 (holding two sexist comments insufficient to show workplace permeated with sexist abuse); *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (noting "courts should filter out . . . isolated incidents (unless extremely serious)").

Mr. Hoko appears to raise two claims of error regarding the district court's disposition of this claim. Rather than pointing to evidence in the record of severe or pervasive harassment based upon his race, color, or national origin, Mr. Hoko maintains that the employee witnesses who refuted his allegation of discriminatory harassment cannot be believed because Huish offered each of them promotions at the time they were interviewed in connection with his report of discrimination. His attack on the credibility of Huish's evidence is misplaced because "[i]t is axiomatic that a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment." *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000). Mr. Hoko also claims that he was not obligated to report the harassment he suffered to Huish because it would have been futile. This argument is likewise unavailing because the district court did not base its summary judgment ruling on his failure to report harassment. It concluded that the single incident of alleged harassment he identified in response to Huish's motion was insufficient to support a claim for harassment/hostile work

environment. We affirm the district court's grant of summary judgment in favor of Huish on this claim.

## B. Disparate Treatment

The district court next addressed Mr. Hoko's claims of disparate treatment based upon his race, color, and national origin. He had the burden of initially establishing a prima facie case of race, color, and national origin discrimination by showing that (1) he "belongs to a protected class"; (2) he "suffered an adverse employment action"; and (3) "the challenged action took place under circumstances giving rise to an inference of discrimination." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). Mr. Hoko asserted that he was treated differently than other, similarly-situated employees, in relation to the incident with Mr. McPhie involving the glycerin spill and with respect to his use of the internet.

"Adverse employment action includes significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (quotation omitted). The district court held that Mr. Hoko's treatment following the glycerin spill, specifically being yelled at by Mr. McPhie, did not rise to the level of an adverse employment action. Regarding his treatment for misusing the internet, Mr. Hoko argued that, while Huish disciplined other employees for their similar violations

of company policy by limiting their internet access, Huish left him with broader access and then audited his use. The district court held that the employees Mr. Hoko identified as being treated differently than he was were not similarly situated to him. Moreover, allowing Mr. Hoko to retain broader internet access was not an adverse employment action, as his level of access was related to his job responsibilities.

Mr. Hoko argues that the district court erred in concluding that the other employees, whose internet access was limited in response to their misuse, were not similarly situated to him. But he fails to address the district court's determination that neither his treatment following the glycerin spill nor Huish's decision to maintain his level of internet access were adverse employment actions. We agree with the district court's conclusion that Mr. Hoko failed to show an adverse employment action in order to establish a prima facie case of disparate treatment. We therefore affirm summary judgment in favor of Huish on these claims.

## C. Retaliation

To support a prima facie case of retaliation, a plaintiff must show that (1) he "engaged in protected opposition to discrimination"; (2) he "suffered an adverse employment action"; and (3) "there is a causal connection between the protected activity and the adverse employment action." *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (quotation omitted). In this context,

an adverse employment action is any action that a reasonable employee would have found materially adverse, such that he "might be dissuaded from making a charge of discrimination." *Somoza*, 513 F.3d at 1213. Mr. Hoko alleged both retaliatory harassment and retaliatory termination.

## 1. Retaliatory Harassment

Mr. Hoko alleged that, in retaliation for his complaint to Mr. McPhie that he was managing the department in a discriminatory manner, Mr. McPhie harassed him by yelling at him and blaming him for the glycerin spill. The district court found that, according to his own chronology, Mr. Hoko complained to Mr. McPhie about discrimination *after* the incident regarding the glycerin spill. Thus, he failed to show a causal connection between his protected activity and Mr. McPhie's alleged retaliation. Mr. Hoko also contended that Mr. McPhie's request for an audit of Mr. Hoko's internet usage was in retaliation for his complaint about discrimination and was done in order to preempt Mr. Hoko from taking his complaint to Mr. McPhie's supervisor. The district court held that the request for an internet audit was not materially adverse, as it would not dissuade a reasonable employee from making or supporting a charge of discrimination. Mr. Hoko does not raise any claim of error with respect to either of these bases for the district court's conclusion that he failed to establish a prima facie case of retaliatory harassment. We therefore affirm the district court's grant of summary judgment in favor of Huish on these claims.

## 2. Retaliatory Termination

Mr. Hoko also contended that he was terminated in retaliation for complaining about discrimination to Mr. McPhie. The district court assumed that Mr. Hoko had satisfied his burden to establish a prima facie case of retaliatory termination, but the court held that Huish came forward with a legitimate, nondiscriminatory reason for discharging him: the fact that he visited non-work-related internet sites repeatedly and for extended periods of time during his work day, in violation of company policy. Mr. Hoko does not deny that he used his Huish computer for non-work-related purposes.

"If the employer provides a legitimate, non-discriminatory justification for the action, the burden shifts back to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination." *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004). To establish a genuine issue as to pretext, Mr. Hoko was required to demonstrate that Huish's stated reason was unworthy of belief. *See Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009).

> [He] can meet this standard by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

*Id.* (quotation omitted).

Mr. Hoko contends that the district court erred in concluding that he failed to come forward with any evidence of pretext. He maintains that Huish's violation of company policies in performing the audit of his internet usage and in terminating his employment based upon the audit results is evidence of pretext. An employer's failure to follow its own written or unwritten policy or its established company practice may be relevant to a claim of pretext. *See Green v. New Mexico*, 420 F.3d 1189, 1193 (10th Cir. 2005). We do not address Mr. Hoko's contentions, however, because he did not make either of these arguments in the district court. We decline to exercise our discretion in this case to consider these fact-laden issues for the first time on appeal. *See United States v. Jarvis*, 499 F.3d 1196, 1201-02 (10th Cir. 2007) (noting exception to general rule against considering issue on appeal that was not raised in district court "where the argument involves a pure matter of law and the proper resolution of the issue is certain").

Mr. Hoko repeats one argument here that he did raise in the district court. He claims that Huish treated differently other similarly situated employees who used the internet for non-work-related purposes. "A plaintiff seeking to show pretext often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007) (quotation omitted).

Mr. Hoko identifies Steve Tracy, Mike Wright, Kenneth Taua, and Matthew Rodriguez as Huish employees who were surfing the internet, but were not terminated. While he acknowledges that these other employees did not have the job title of Supervisor, as he did, he argues that they sometimes performed supervisory-type duties; therefore, he maintains that they were similarly situated to him. But "[s]imilarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Id.* (quotation omitted). Mr. Hoko fails to point to evidence indicating that he and these other employees all reported to the same supervisor. *See id.* at 1121 (holding employee who did not report to plaintiff's supervisor was not similarly situated to plaintiff). And his assertion that these other employees sometimes performed supervisory-type duties does not establish that they were subject to the same standards governing performance and discipline that someone with the title of Supervisor was. Nor does Mr. Hoko show that the extent of these other employees' unauthorized internet usage was comparable to his. *See id.* (holding plaintiff failed to produce evidence that other employee's violation of the same work rule was comparable to plaintiff's serious violation). The district court did not err in concluding that Mr. Hoko failed to support his claim of pretext with evidence of disparate treatment. We therefore affirm the grant of summary judgment in favor of Huish on his claim of retaliatory termination.

## D. Wrongful Termination

Mr. Hoko's final claim was that Huish wrongfully terminated him in violation of the policies in its Policy Book. The district court held this claim failed as a matter of law because an employment contract with no specified duration is presumed to be at-will under Utah law. *See Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044 (Utah 1989). The court noted the record reflected that Huish repeatedly informed its employees that they were employed at-will and disclaimed any intent to hire them for a specified period of time. Moreover, Mr. Hoko signed an acknowledgment expressly stating his at-will employment status. Mr. Hoko fails to identify any error in the district court's conclusion. We therefore affirm the grant of summary judgment in favor of Huish on his wrongful-termination claim.

The judgment of the district court is AFFIRMED.

Entered for the Court


William J. Holloway, Jr.
Senior Circuit Judge